UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
333 CONSTITUTION AVE, NW
WASHINGTON, DC 20001

MICHAEL L. BUESGENS
PLAINTIFF

V.

CHARLES ENDS BROWN
ATTORNEY
REAL ESTATE BROKER

SHELLEY BUSH MARMON
BANKRUPTCY ATTORNEY

ARMBRUST & BROWN, LLP

CRADY, JEWETT & MCCULLEY, LLP

JOHN NEAL, DIRECTOR
DISCIPLINE
STATE BAR OF TEXAS
ET. AL.
DEFENDANTS

**RECEIVED**

APR 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CIVIL NO
1:06 CV
01964
RBW

1:06 CV 01964 RBW

1. PLAINTIFF MICHAEL L BUESGENS REQUEST AND **MOTION FOR JUDICIAL NOTICE**

A. OF VERIFIABLE FACTS

B. AND ADJUDICATIVE FACTS

2. FOR THE FOLLOWING HISTORY OF ATTORNEY AND LAW FIRM MISCONDUCT AND INTENTIONAL AND WILLFUL ADVERSE ACTIONS.

3. THAT HAVE SEVERELY HARMED PLAINTIFF MICHAEL L BUESGENS

4. THIS MOTION FOR JUDICIAL NOTICE OF EASILY VERIFIABLE AND ADJUDICATIVE FACTS

5. BEGINS WITH PLAINTIFF BUESGENS MOTION AND REQUEST FOR DISCOVERY AND DISCLOSURE AND ADMISSIONS AND PRODUCTION OF DOCUMENTS AND

2

1:06 CV 01964 RBW
NO MORE MDC-1800    4/18/2007
AND
RELATED CIVIL ACTIONS

6.    THE HISTORY AND SEQUENCE
OF EVENTS FOR PLAINTIFF
MICHAEL L BUESGENS COMPLAINTS
OF
7.    ATTORNEY MISCONDUCT
AND
8.    THE CENTRAL ISSUES OF
9.    HOUSING DISCRIMINATION
10.    RETALIATORY EVICTION
11.    CONSTRUCTIVE EVICTION

12.    DENIAL OF REASONABLE ACCOMMODATION

13.    SEE THE ATTACHED MOTION
FOR DISCOVERY
AND
14.    BUESGENS VERIFICATION - DECLARATION
AND
15.    EXHIBITS
16.    CERTIFICATE OF SERVICE

3

1:06 CV 01964 RBW
AND
RELATED CIVIL ACTIONS


RESPECTFULLY SUBMITTED

Michael L Buesgens
MICHAEL L BUESGENS
EXTENDED STAY AMERICA
MAILING ADDRESS
3112 WINDSOR RD, #A322
AUSTIN, TEXAS 78703

512-339-6005 X 7958
FAX: 512-339-6099

MIKEBUESGENS@HOTMAIL.COM


4.

1:06CV01964RBW
AND
RELATED CIVIL AND
ADMINISTRATIVE ACTIONS

# TABLE OF CONTENTS

I. PLAINTIFF BUESGENS
MOTION FOR DISCOVERY
AND
HISTORY OF SUBJECT
HOUSING DISCRIMINATION
ATTORNEY MISCONDUCT
PAGES 2 - 32
ITEMS 1 - 237

II. SPECIFIC DISCOVERY
REQUESTS
PAGES 33 - 40
ITEMS 1 - 79

III. CERTIFICATE OF SERVICE
PAGES 41 - 46
ITEMS 1 - 47

5

1:06CV01964 RBW

TABLE OF CONTENTS - CONTINUED

IV. VERIFICATION AND DECLARATION OF

MICHAEL L. BUESGENS

PAGE 48

V. EXHIBITS

PAGES 49 - 55

ITEMS 1 - 47

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE, NW
WASHINGTON, DC 20001

MICHAEL L QUESGENS
PLAINTIFF

V.

CHARLES EADS BROWN,
ATTORNEY

SHELLEY BUSH MARMON,
ATTORNEY

DUNHAM JEWETT,
ATTORNEY

DAVID B. ARMBRUST,
ATTORNEY

GREGORY S. CAGLE,
ATTORNEY

CIVIL NO.
1:06 CV
01964
RBW

ARMBRUST & BROWN, **LLP**

CRADY, JEWETT & McCULLEY, **LLP**

JOHN NEAL ATTORNEY
DIRECTOR OF DISCIPLINE
STATE BAR OF TEXAS **ET.AL.**
DEFENDANTS

CIVIL NO.
1:06 CV
01964
RBW

**I**

1. PLAINTIFF MICHAEL BUESGENS
MOTION FOR DISCOVERY AND
DISCLOSURE AND ADMISSIONS
AND PRODUCTION OF DOCUMENTS

2. **TO.** THE FOREGOING ATTORNEYS

3. **AND** MEGAN MONIQUE GOERES ✓
FORMER TENANT
FALCON RIDGE APARTMENTS
APARTMENT 1033
500 EAST STASSNEY
AUSTIN, TEXAS 78745

2

1:06 CV 01964 RBW

4. ANDREW KEVER, GENERAL
COUNSEL **AND** AT WINSTEAD

5. GRANDE COMMUNICATIONS **FOR**

6. MEGAN MONIQUE GOERES,
HUMA RELATIONS MANAGER
13505 BURNET ROAD
AUSTIN, TEXAS 78727
PHONE: 512-220-4600

7. TRACY CAPE, DIRECTOR **AND**

8. RAY STROMAN, VICE PRESIDENT
GRANDE COMMUNICATIONS
401 CARLSON CIRCLE
SAN MARCOS, TEXAS 78666
PHONE: 512-878-5236

9. **SUBJECT**

10. MEGAN M. GOERES PERJURY
AT TRIALS ON JANUARY 26, 2006
AND JUNE 16, 2006

3

1:06CV01964RBW

11. MEGAN M. GOERES
CONCEALING EVIDENCE
AND

12. ATTORNEYS AND LAW FIRMS
SUBORNING PERJURY AND
CONCEALING EVIDENCE
AND

13. ATTORNEYS AND LAW FIRMS
AND MEGAN M. GOERES ✓

14. LYING TO THE COURT
AND TO BUESGENS

15. HAVE CAUSED BUESGENS SEVERE
HARM AND PAIN THAT HAS
AGGRAVATED HIS MEDICAL ILLNESS—
BIPOLAR.

16. YOU COULD NOT HAVE ACCOMPLISHED
THIS CONTINUAL LIE WITHOUT ✓
THE AID OF WILLING JUDICIAL
OFFICIALS. YOU BOUGHT THEM.

4

1:06CV01964 RBW

17. DO ANY OF YOU REMEMBER ✓
WHAT BUESGENS REASONABLE
ACCOMMODATION REQUEST WAS
ON DECEMBER 22, 2005 ?

18. BUESGENS REQUESTED THE
FOLLOWING :

19. THAT NO LARGE DOGS LIVE
ABOVE HIM IN APARTMENT 1033
AT FALCON RIDGE APARTMENTS

20. THAT DOESN'T MEAN NO DOGS.
21. IT ONLY MEANS LARGE DOGS.

22. ALL YOU HAD TO DO WAS MAKE
A SMALL CHANGE-POLICY THAT
WAS NOT AN UNDUE HARDSHIP.

23. THAT WOULD HAVE BEEN A
REASONABLE ACCOMMODATION PER
THE ADA AND THE REHAB ACT,
AND FHA.

5

1:06 CV 01964 RBW

24. BUT GREYSTAR AND GREP PROPERTY MANAGERS AND FALCON RIDGE APARTMENTS OWNERS AND LANDLORDS AND

25. ATTORNEY CHARLES E. BROWN
26. REFUSED TO GRANT THE REQUEST OR
27. MAKE THIS ONE DEVIATION FROM POLICY
28. BECAUSE
A. GREYSTAR MANAGERS
B. DEBRA WEHMEIER AND
C. MANDY ROGERS AND
D. AMANDA WILSON-TORRES AND
E. SAMANTHA SHEPPARD
29. WANTED GUESGENS OUT AND THEY USED THE DOG ISSUE TO ACCOMPLISH THIS

6

1:06CV01964RBW

30. I WAS DISCRIMINATED AGAINST
31. BASED ON MY DISABILITY BIPOLAR, AND THE DOG WAS THE PRETEXT.

32. I.R.S. EMPLOYEES THAT LIVED
33. AT FALCON RIDGE APARTMENTS TALKED ABOUT ME TO THE FOREGOING GREYSTAR-GREP FAMILY PROPERTY MANAGERS

34. BUESGENS WAS A FORMER I.R.S. EMPLOYEE AT AUSTIN COMPLIANCE CENTER 1821 DIRECTORS BLVD AUSTIN, TEXAS 78744

35. ONE MILE FROM FALCON RIDGE APARTMENTS 500 EAST STASSNEY LANE AUSTIN, TEXAS 78745

36. BUESGENS KNOWS HOW VICIOUS THOSE EMPLOYEES GOSSIPED ABOUT HIM AT WORK.

7

1:06 CV 01964 RBW

37. THE I.R.S. EMPLOYEES THAT LIVED AT FALCON RIDGE APARTMENTS TOLD THE GREYSTAR GREP FAMILY MANAGERS THAT BUESGENS HAD MENTAL PROBLEMS.

38. THAT HE WAS A THREAT AND A DANGER TO THEM.

39. ONE SUCH I.R.S. EMPLOYEE IS

40. DORIENNE BONILLA WHO LIVED AT FALCON RIDGE APARTMENTS AND

41. MOVED OUT IN 2003 SHORTLY AFTER BUESGENS MOVED IN

42. BUESGENS LEASE CONTRACT BEGAN ON JUNE 28, 2003 AND THEN RENEWALS

43. THE LAST RENEWAL WAS ON 12/05/05 FOR THE TERM 12/26/05 THROUGH 10/22/06. 8

1:06CV01964 RBW

44. BUESGENS ALWAYS PAID HIS
RENT ON TIME AND WAS
NEVER LATE.

45. HE NEVER RECEIVED A WARNING
NOTICE OR COMPLAINT FROM
FALCON RIDGE APARTMENTS
46. OR ANY OTHER APARTMENT
COMMUNITY

47. HE HAS NEVER BEEN SUBJECT
TO EVICTION AND HE HAD
48. AN EXCELLENT CREDIT HISTORY

49. BUESGENS FIRST COMPLAINT OF
NOISE AND DISTURBANCE FROM
APARTMENT 1033 WAS ON
50. NOVEMBER 5 2005 TO
A. LEANN BIEHL
B. FALCON RIDGE MANAGER

51. THE SECOND COMPLAINT WAS ON
NOVEMBER 19, 2005

9

1:06 CV01964RBW

52. GREYSTAR-GREP-FALCON RIDGE APARTMENTS MANAGERS-OWNERS LANDLORDS REFUSED TO DO ANYTHING ABOUT IT

53. SO BUESGENS CALLED THE POLICE AND ANIMAL AND THEY

54. REFUSED TO DO ANYTHING

55. ON DECEMBER 15, 2005 BUESGENS RECEIVED A

56. WARNING FROM ATTORNEY CHARLES EADS BROWN

57. ON DECEMBER 21, 2005 BUESGENS RECEIVED A NOTICE TO VACATE FROM ATTORNEY

58. CHARLES EADS BROWN AND

59. GREYSTAR-GREP-FALCON RIDGE APARTMENTS -MANAGERS-OWNERS- LANDLORDS

10

1:06CV01964RBW

60. BUESGENS LIVED IN APARTMENT 1023 500 EAST STASSNEY LANE AUSTIN, TEXAS 78745

61. NOTICE TO VACATE ✓

62. DATED: 12/21/05 BE OUT BY 12:00AM ON
   A. CHRISTMAS EVE ✓
   B. DECEMBER 24, 2005

63. ON DECEMBER 22, 2005 ✓ BUESGENS REQUESTED REASONABLE ACCOMODATION

64. ON DECEMBER 28, 2005 ✓ BUESGENS FILED A HOUSING

65. DISCRIMINATION COMPLAINT WITH JOHN A. BENAVIDES, INVESTIGATOR AT THE CITY OF AUSTIN HUD CERTIFIED FAIR HOUSING OFFICE.

11

1:06CV01964RBW

66. ON DECEMBER 30, 2005
AT 8:30 AM BUESGENS
WAS SERVED WITH AN
EVICTION SUIT

67. CASE NO. 041509
BY

68. ATTORNEY CHARLES ENOS BROWN
AND GREYSTAR-GREP-FALCON
RIDGE APARTMENTS - MANAGERS
OWNERS - LANDLORDS

69. JANUARY 26, 2006
TRIAL AT J.P. #5
AUSTIN, TEXAS

70. MEGAN. M. GOERES TESTIFIES
AND LIED AND CRIED THE
ENTIRE TIME.

71. MANDY ROGERS, MANAGER
TESTIFIED
AMANDA WILSON - TORRES TESTIFIED

12

1:06CV01964RBW

72. AT VOIR DIRE ON JANUARY 26, 2006

73 ATTORNEY CHARLES EADS BROWN

74. POLLUTED THE WELL WITH HIS TALK OF BUESGENS MEDICAL DISABILITY - BIPLOR AND ASKED VOIR DIRE

75. WHAT THEY KNEW ABOUT BIPOLAR MEDICATIONS

76. BUESGENS HAS CONTACTED MEMBERS OF VOIR DIRE IN 2006 AND 2007 BY LETTER

77. THEY NEVER RESPONDED TO HIS REQUEST FOR TESTIMONY OR AFFIDAVIT.

78. JUNE 16 2006 TRIAL THE APPEAL OF CASE NO. 041509

79. CAUSE NO. C-1-CV-06-000678 THERE WAS NOT A JURY THIS TIME.

13

1:06CV01964RBW

80. MEGAN M. GOERES TESTIFIED ✓
LIED BUT DID NOT CRY.

81. MANDY ROGERS TESTIFIED ✓
AND LIED.

82. DEBRA WEHMEIER REFUSED ✓
TO APPEAR OR PICK UP THE
SUBPOENA THAT SHE SAID
SHE WOULD DO.

83. THE ATTORNEYS GREGORY S. ✓
CAGLE AND CHARLES E.

84. BROWN LIED AND SAID
THEY DIDNT KNOW WHERE
DEBRA WEHMEIER WAS

85. THAT SHE WAS OUT OF STATE
SOMEWHERE

86 CASE CLOSED ✓
BUESGENS MUST PAY $40,000.00

14

1:06CV01964RBW

87 ON SEPTEMBER 8, 2006 BUESGENS

88. $10,000.00 CASH APPEAL BOND
FROM HIS I.R.A. ACCOUNT
WAS TAKEN BY

89 DAVID B. ARMBRUST ✓
90 GREGORY S. CAGLE
91. ARMBRUST & BROWN, **LLP**
100 CONGRESS AVE. #1300
AUSTIN, TEXAS 78701
AND

92. CHARLES EADS BROWN ✓
3624 NORTH HILLS DRIVE
AUSTIN, TEXAS 78731
AND

93 DUNHAM JEWETT ✓
94 SHELLEY BUSH MARMON ✓
95 CRADY, JEWETT & MCCULLEY, LLP
2727 ALLEN PARKWAY, #1700
HOUSTON, TEXAS 77019-2125
PHONE: 713-739-7007
FAX: 713-739-8403

15

1:06 CV 01964 RBW
HUD #06-06-293-8

96. PLAINTIFF MICHELL BOESGENS
HAS BEEN DENIED DISCOVERY
AND DISCLOSURE BY THE
FOREGOING AND THEIR CLIENTS

97. ANY DISCOVERY THAT WAS
ALLOWED AMOUNTED TO MISLEADING
GARBARGE.

98. HERE AGAIN THIS COULD ONLY
HAPPEN WITH THE AID OF
WILLING JUDICIAL OFFICIALS.

9 THE FOREGOING IS WHY BUESGENS
HAS BEEN IN MANY DIFFERENT
FORUMS.

100. HE IS LOOKING FOR A FORUM
A. THAT FOLLOWS THE LAWS AND
B. THE RULES OF PROCEDURE
C. ACCOUNTABILITY

16

1:06CV01964RBW
1:06CV00226LY-RP
1:06CV00260LY

101   ATTORNEYS AND LAW FIRMS AND
DEFENDANTS ADVERSE ACTIONS
AND MISCONDUCT HAVE CREATED
MORE..CAUSES OF ACTION. THAT
PLAINTIFF BUESGENS CONTINUES
TO PURSUE ..

102.   IN TURN THIS HAS BROUGHT IN
MORE INDIVIDUALS AND PERSONS
OF INTEREST TO THIS LITIGATION

103.   WITHOUT DISCOVERY AND A
HOSTILE JUDICIARY-PLAINTIFF
BUESGENS HAS BEEN FORCED
TO DO BACKGROUND INVESTIGATION
ON PRACTICALLY EVERYONE
INVOLVED IN THIS MESS..

104.   THOSE INVESTIGATIONS HAVE PROVIDED
ADDITIONAL NEXUS

17

1:06 CV01964 RBW
CASE NO. 041509
CAUSE NO. C-1-CV-06-000678
CASE NO. D-1-GN-06-000282

105. PLAINTIFF BUESGENS ESTIMATES THE RELIEF AND DAMAGES FROM THE FOREGOING AT $1,200,000.00 ✓

FROM ✓

106. THE LIABILITY OF INDIVIDUALS PERSONS ENTITIES AND GOVERNMENT OFFICIALS

107. IT HAS ALWAYS BEEN PLAINTIFF BUESGENS COMPLAINT THAT MEGAN M. GOERES - TENANT AND

108. THE GREYSTAR - GREP - FALCON RIDGE. FAMILY HAVE BEEN IN VIOLATION OF PROPERTY CODES AND MUNICIPAL ORDINANCES AND LEASE CONTRACT AND FAIR HOUSING ACT ET.AL.

18

1:06CV01964RBW
CASE NO. 041509
TEXAS SUPREME COURT # 06-0157

109.    MEGAN MONIQUE GOERES ✓

A.    TENANT

B.    HUMAN RELATIONS MANAGER AT

110.    GRANDE COMMUNICATIONS
        AUSTIN, TEXAS
                        AND

111.    ANDY SARWAL ✓

112.    THE WEIMARANER (LARGE
        ANIMAL DOG OWNERS)
                        AT

113.    FALCON RIDGE APARTMENTS ✓
        APARTMENT 1623
        500 EAST STASSNEY LANE
        AUSTIN, TEXAS  78745

114.    MOVED THE WEIMARANER DOG ✓
        INTO APARTMENT 1033 WITHOUT
A.    A PET ADDENDUM AND IN
B.    VIOLATION OF LEASE CONTRACT

19

1:06CV01964 RBW
HUD #06-06-293-8

115   THE NOISE AND DISTURBANCE
FROM THIS LARGE ANIMAL
DOG ON THE CEILING OF
BUESGENS APARTMENT NO. 1023
BECAME INTOLERABLE FOR
BUESGENS.

116   PLAINTIFF BUESGENS LAWFULLY
MADE COMPLAINTS ABOUT
THIS TO THE FOLLOWING

117   LEANN BIEHL
118   AMANDA WILSON-TORRES
119   MANDY ROGERS
120   SAMANTHA SHEPPARD
121   DEBRA WEITMEIER
122   ARNOLD C. TAUCK, OWNER
123   JACK C. MOSS, LANDLORDS
124   KYLE D. TAUCK, PARTNERS
       AND
125   AUSTIN POLICE DEPARTMENT
126   ANIMAL CONTROL

20

1:06CV01964RBW
3:07CV00043KI
PORTLAND, OREGON
2:07CV02116
KANSAS CITY, KANSAS

AND TO

127    MEGAN MONIQUE GOERES ✓
128    SCOTT GALLOWAY
129    PATRICIA GOERES GALLOWAY ✓
130.   CHARLES E. BROWN
131.   JOHN A. BENAVIDES, INVESTIGATOR
       AT CITY OF AUSTIN - HUD OFFICE
              AND
132    AUSTIN APARTMENT ASSOCIATION ✓
133    KRISTAN ARRONA, VICE PRESIDENT

134    GREY STAR ✓ MANAGEMENT SERVICES, LP
135    GREP GENERAL PARTNER, LLC
136    ROBERT A. FAITH, PRESIDENT
137    GARY KIM OLDHAM, DALLAS, TEXAS
       REGIONAL PARTNER

138    FALCON APARTMENTS OF AUSTIN I, INC ✓
139    FALCON APARTMENTS OF AUSTIN, LTD

21

1:06CV01964 RBW
FIFTH CIRCUIT # 06-06-293-8
ALSO # 06-06-293-8

140   PLAINTIFF MICHAEL L BUESGENS
REQUEST FOR RELIEF FAILED
TO PRODUCE ANY.

141   THE POLICE TOLD BUESGENS
TO GO TO COURT WITH THIS.

142   ARNOLD C. TAUCH
143   JACK C. MOSS
144   KYLE D. TAUCH         ✓
145   REFUSED TO RESPOND TO
THE MANY LETTERS BUESGENS
SENT THEM BEGINNING IN
DECEMBER, 2005 AND
146   CONTINUOUS!

147   THEIR RESPONSE CAME IN THE
FORM OF
148         EVICTION ATTORNEY
CHARLES EADS BROWN, ET. AL.
149   ARMBRUST & BROWN, LLP
150   CRADY, JEWETT & MCCULLEY, LLP
22

1:06CV01964RBW
HUD # 06-06-293-8 — 12/28/05
CASE NO. 041509 — 12/30/05
TRIAL                    01/26/06
C-1-CV-06-000678
TRIAL                    06/16/06

151    MEGAN MONIQUE GOERES ✓

152    ANDY SARWAL ✓
WERE IN VIOLATION OF THE
APARTMENT LEASE CONTRACT
153    AND PROPERTY CODES AND
154    MUNICIPAL ORDINANCES

155    MEGAN M. GOERES ✓ MOVED
INTO APARTMENT 1033
FALCON RIDGE APARTMENTS
156    ON JULY 23, 2005 ✓
157    THE WEIMARANER DOG AND
STEP FATHER
158    SCOTT GALLOWAY ✓
159    CIVIL NO. ✓
160    APPEARED AT APARTMENT 1033
IN OCTOBER 2005 WITHOUT
PET ADDENDUM
                    23

1:06 CV 01964 RBW

161.  MEGAN MONIQUE GOERES ✓
162.  SCOTT GALLOWAY, WEST LINN OREGON
163   ANDY SARWAL, STONECLIFF DRIVE AUSTIN, TEXAS

164   ACQUIRED A PET ADDENDUM ✓ TO THE APARTMENT LEASE CONTRACT ON DECEMBER 28, 2005 ✓

165   PLAINTIFF BUESGENS DISCOVERY ✓ REQUESTS IN
166   CASE NO. 041509
167   CAUSE NO. C-1-CV-06-000678
168   CASE NO. D-1-GN-06-000262
169   CIVIL NO. 1:06 CV 00260 LY
170   CIVIL NO. 1:06 CV 00 226 LY-RP
171       WERE
      ROUTINELY BEATEN DOWN ✓ BY ATTORNEYS WITH THE AID OF
172   JUDICIAL OFFICIALS ✓

24

1:06 CV 01964 RBW
CIVIL NO. 1:06 CV 00226 LY-RP

173   PLAINTIFF BUESGENS DIA
RECEIVE SOME MISLEADING
DISCOVERY FROM

174.   MEGAN MONIQUE GOERES
AND
175   SHELLEY BUSH MARMON
176   DUN HAM JEWETT
177   CRADY, JEWETT & McCULLEY, LLP

178   DAVID B. ARMBRUST
179   GREGORY S. CAGLE
180   ARMBRUST & BROWN, LLP
IN
181   CIVIL NO. 1:06 CV 00226 LY-RP

182   WHICH INCLUDED MEGAN M. ✓
GOERES SECOND LEASE
CONTRACT THAT HAD ANIMAL ✓
ADDENDUM DATED 12/28/05

25

1:06 CV 01964 RBW
HUO # 06-06-293-8

183 THE PROBLEM WITH THIS IS
MEGAN MONIQUE GOERES ✓
MOVED INTO
FALCON RIDGE APARTMENTS
APARTMENT 1033
500 EAST STASSNEY
AUSTIN, TEXAS 78745

184 ON JULY 23, 2005 ✓
AND
185 PLAINTIFF BUESGENS NOISE ✓
AND NUISANCE PROBLEM
BEGAN IN OCTOBER, 2005 ✓
AND WAS REPORTED ON
186 NOVEMBER 5, 2005
AND
187 NOVEMBER 19, 2005
TO
188 FALCON - GREYSTAR - GREP
FAMILY - LANDLORDS - OWNERS
MANAGERS AND TO
189 MEGAN GOERES ✓
190 SCOTT GALLOWAY
26

191  PATRICIA GOERES GALLOWAY
     AND
192  RYAN GOERES – BROTHER

193. PLAINTIFF BUESGENS NOTIFIED
     JUDGE EARL LEROY YEAKEL, III
194. MAGISTRATE JUDGE ROBERT
     AND
     L. PITMAN. OF THIS DISCREPANCY
195  AND PROVIDED COPIES OF
     THIS MISREPRESENTED
     DISCOVERY

196. THEY CHOSE TO IGNORE IT

197. THUS WE HAVE MORE CONTINUAL
     LITIGATION IN OTHER FORUMS
198  IN SEARCH FOR THE
     APPLICATION OF THE RULES
     OF LAW AND PROCEDURES AND
199. ADDITIONAL DEFENDANTS WITH
     KNOWLEDGE OF THE FACTS
     IN COLLUSIVE CONCEALMENT.

27

1:06 CV 01964 RBW
HUD # 06-06-293-8

207  MEGAN MONIQUE GOERES ✓
208  RELATIVES AND FRIENDS
209  AND CO WORKERS AT
     GRANGE COMMUNICATIONS HAVE
210  AWARENESS
211    KNOWLEDGE
     OF FACTS ABOUT THE FOREGOING

     FOR EXAMPLE: ✓
212.  SCOTT GALLOWAY WESTLINN
     OREGON -STEP FATHER
     U.P.S. DELIVERY DRIVER
213  CIVIL NO. 3:07CV00093KI
214  CIVIL NO. 2:07CV02116

215  PATRICIA ✓ GOERES GALLOWAY
     MOTHER

216.  RYAN GOERES ✓ BROTHER
     HUNT OIL COMPANY, MANAGER
     MIDLAND, TEXAS

28

1:06 CV 01964 RBW
HUD # 06-06-293-8

200 ATTORNEY CHARLES ENOS
BROWN ALWAYS GOT A
SUBPOENA FOR
201 MEGAN M. GOERES ✓
TESTIMONY
ON
202 JANUARY 26, 2006
AND
203 JUNE 16, 2006

204 BUT A SUBPOENA WAS NOT ✓
NECESSARY FOR MEGAN
M. GOERES

205 BECAUSE ✓ SHE WAS PAID AND
RECEIVED ECONOMIC BENEFITS
FOR HER TESTIMONY.

206 JUDICIAL OFFICIALS CHOSE TO ✓
IGNORE THIS ALSO.

29

1:06CV01964RBW
HUD#06-06-293-8

217.   ANDY SARWAL, FRIEND ET. AL.
WEIMARANER DOG OWNER
7503 STONECLIFF DRIVE
AUSTIN TEXAS 78731
PHONE: 512-342-2050

218    TRACY CAPE, DIRECTOR.
219    KAY STROMAN, VICE PRESIDENT
220    GRANDE COMMUNICATIONS
401 CARLSON CIRCLE
SAN MARCOS TEXAS 78666
PHONE: 512-878-5236
FAX: 512-878-5924

221.   ANDREW KEVER, GENERAL.
COUNSEL-ATTORNEY-WINSTENY
222.   GRANDE COMMUNICATIONS
TEXAS BAR CARD 11367050
401 CONGRESS AVENUE, #2100
AUSTIN, TEXAS 78701
PHONE: 512-370-2845
FAX: 512-370-2850

30

1:06CV01964RBW
CIVIL NO. 3:07CV00043 KI
CIVIL NO. 2:07CV02116

223    SCOTT GALLOWAY, STEPFATHER,
UNITED PARCEL SERVICE
DELIVERY DRIVER
OCTOBER-2005-FALCON RIDGE APTS
1875 QEANA DRIVE
WEST LINN, OREGON 97068
PHONE: 503-657-4020

224.   PATRICA GOERES GALLOWAY, MOTHER
WEST LINN, OREGON

225    OCTOBER, 2005 FALCON RIDGE APTS

226.   TODD A. REED ATTORNEY
227.   JERRY WEBBERMAN ATTORNEY
228.   AND RUTH (ANDY) SARWAL ✓
229.   JACKSON WALKER LLP
100 CONGRESS AVE' #1100
AUSTIN, TEXAS 78701
PHONE: 512-236-2270

31

1:06 CV 01964 RBW
J. P. COURT # 041509
TRAVIS COUNTY, AUSTIN, TEXAS

230. FORMER JUSTICE OF THE
PEACE PRECINCT NO. 3
231 CASE NO. 041509
232. MELISSA YOUNG GOODWIN ✓
TEXAS BAR CARD 00788733
NOW AT

233. POTTS & REILLY, LLP ✓
401 WEST 15TH ST. # 850
AUSTIN, TEXAS 78701
PHONE: 512-469-7474

234. PLAINTIFF BUESGENS COUNTERCLAIM ✓
AND CROSSCLAIM ON JANUARY
9, 2006 CASE NO. 041509
235. NEVER RULED ON ✓
AND.
236. FALCON RIDGE APARTMENTS
EVICTION SUITS ON FILE
237. AND FALCON RIDGE APARTMENTS ✓
HAS NO STANDING OR CAPACITY
TO SUE ANYONE

32

1:06CV01964RBW

II PLAINTIFF MICHAEL L BUESGENS
REQUESTS
THE FOLLOWING
FROM
THE FOREGOING

1. ADMISSIONS TO THE FOREGOING
ADVERSE ACTIONS AND
MISCONDUCT

2. PRODUCTION OF THE PET
ADDENDUM FOR THE PERIOD
WHEN

MEGAN M. MOVES
ORIGINALLY MOVED
INTO    APT 1033
FALCON RIDGE APARTMENTS
THAT BEGAN IN JULY, 2005
THROUGH THE TERM
DECEMBER 28, 2005

3. THE EXACT DATE THE WEIMARINER
LARGE ANIMAL DOG - 80 LBS
HIGH ENERGY MOVED INTO APT 1033
33

1:06CV01964RBW
HUD # 06-06-293-8
1:06CV00967LY-RP

4. THE EXACT DATES THAT ANDY (ANDIRUTH) SARAWAL MADE APPEARANCES AT APARTMENT 1033, FALCON RIDGE APARTMENTS

5. THE EXACT DATE THAT ANDY SARAWAL LEFT HIS DOG WITH MEGAN M. GOERES

6. THE EXACT DATE THAT ANDY SARAWAL CALLED QUITS WITH MEGAN M. GOERES

THE EXACT DATES THAT SCOTT GALLOWAY WAS AT APARTMENT 1033

7. THE EXACT DATES THAT PATRICIA GOERES GALLOWAY WAS APARTMENT 1033

34

1:06CV01964RBW
1:06CV00967LY-RP

8. THE EXACT DATES AND
REASONS WHY RYAN GOERES
BROTHER APPEARED AT
MEGAN GOERES APARTMENT
1033

9. FALCON RIDGE APARTMENTS
500 EAST STASSNEY
AUSTIN, TEXAS 78745

10. WHAT WAS RYAN GOERES
RELATIONSHIP TO THE WEIMARANER
DOG AND WHAT DID HE
DO WITH THE DOG AND WHY

11. WEIMARANER DOGS ARE HIGH
ENERGY ANIMALS THAT REQUIRE
EXCESSIVE EXERCISE

12. NOT
SUITABLE FOR SMALL ONE
BEDROOM APARTMENTS - #1033

35

1:06 CV 01964 RBW

13. DISCOVERY RULES

14. YA MEANS YA
15. NO MEANS NO

16. I DON'T KNOW MEANS A LIE

17. COPY OF PET ADDENDUM MEANS COPY OF PET ADDENDUM FOR JULY, 2005 THROUGH DECEMBER 28, 2005

18. LEASE CONTRACT MEANS THE ONE THAT BEGAN ON JULY, 2005

19. NOT THE ONE THAT BEGAN DECEMBER 28, 2005

36

1:06 CV 01964 RBW

20. MEGAN MONIQUE GOERES
21. RYAN GOERES
22. SCOTT GALLOWAY
23. PATRICIA GOERES GALLOWAY
24. ANJIRUH (ANDY) SARWAL

HAVE
25. WILLFULLY AND MALICIOUSLY
CONCEALED EVIDENCE
AND
26. SO HAS

27. THE FOREGOING ATTORNEYS
AND LAW FIRMS
AND
28. DEFENDANT CLIENTS
29. ARNOLD C. TAUCH
30. JACK C. MOSS
31. KYLE D. TAUCH
32. FALCON APARTMENTS OF AUSTIN
I, INC.
33. FALCON APARTMENTS OF AUSTIN,
LTD

37

1:06 CV 01964 RBW

34. GREYSTAR MANAGEMENT SERVICES, LP
35. GREP GENERAL PARTNER LLC
36. ROBERT A. FAITH, PRESIDENT
37. GARY KIN OLDHAM, PARTNER
38. DEBRA WEIMEIER, REGIONAL
     VICE PRESIDENT
39.        EMPLOYEES   ET. AL.
40. JACK E FRITTS, MAINTAINANCE
41. MANDY ROGERS
42. AMANDA WILSON-TORRES
43. LENNA BIEHL
44. SAMANTHA SHEPPARD

45. GOVERNMENT OFFICIALS
46. CITY OF AUSTIN, TEXAS
47. TRAVIS COUNTY
48. STATE OF TEXAS
49. U.S. DISTRICT COURT
     AUSTIN, TEXAS
50. FIFTH CIRCUIT COURT OF APPEALS

51. U.S. DEPARTMENT OF HOUSING AND
     URBAN DEVELOPMENT HUD
52. # 06-06-293-8  FILED: 12/28/05

38



1:06 CV 01964 RBW
1:06 CV 00967 LY-RP
1:06 CV 00226 LY-RP
1:06 CV 00260 LY

53.    THE FOLLOWING ATTORNEYS
       AND LAW FIRM ARE NOW
       DIRECTLY RELATED TO THE
       FOREGOING AND CONTINUE
       WITH THE COVER UP IN
54.    PORTLAND, OREGON.

55.    DOUGLAS G. HOUSER, OWNER
56.    LLOYD BERNSTEIN, ATTORNEY
57.    MAREN HOLMBOE, ATTORNEY
58.    BULLIVANT, HOUSER, BAILEY, P.C.

59.    CIVIL NO. 3:07CV00043 KI
60.    CIVIL NO. 2:07CV02116
61.    PORTLAND, OREGON
62.    KANSAS CITY, KANSAS
                        AND
63.    UNITED PARCEL SERVICE - U.A.S.
64.    SCOTT GALLOWAY'S EMPLOYER
       PORTLAND, OREGON

                39

65. 1:06CV01964(RBW)
66. 1:06CV00967LY-RP
67. 1:06CV00226LY-RP
68. 1:06CV00260LY
69. 3:07CV00043KI
70. 2:07CV02116
71. HUD #06-06-293-8

72. PLAINTIFF MICHAEL L BUESGENS
MOTIONS TO REOPEN
73. CIVIL NO. 1:06CV00226LY-RP
74. CIVIL NO. 1:06CV00260LY
75. IGNORED
BY
76. JUDGE EARL LEROY YEAKEL, III
77. MAGISTRATE JUDGE ROBERT L.
PITMAN - FORMER AUSA
AND
78. CHIEF JUDGE SAM SPARKS
AUSTIN, TEXAS
AND
79. CHIEF JUDGE FOR THE WESTERN
DISTRICT OF TEXAS
JUDGE WALTER S. SMITH
WACO, TEXAS

40

1:06CV01964RBW
1:06CV00967LY-RP


RESPECTFULLY SUBMITTED

*Michael Buegens*
MICHAEL L BUEGENS
APRIL 26, 2007

III   CERTIFICATE OF SERVICE

I, CERTIFY THAT ONE TRUE
COPY OF THIS NOTICE OF
DISCOVERY ABUSE AND
MOTION FOR DISCOVERY AND
DISCLOSURE AND ADMISSIONS
AND PRODUCTION OF DOCUMENTS
WAS SERVED BY FIRST
CLASS MAIL ON THIS 27TH
DAY OF APRIL, 2007

ADDRESSED **TO**:


41

1:06CV01964RBW
1:06CV00967LY-RP
3:06CV00043KL
2:07CV02116

1. MEGAN M. GOERES,
   HUMAN RELATIONS MANAGER
2. GRANDE COMMUNICATIONS
   AND
   FORMER TENANT AT
   FALCON RIDGE APARTMENTS
   APARTMENTS 1033 AND 327

   13505 BURNET ROAD
   AUSTIN, TEXAS 78727

3. CHARLES EADS BROWN
   ATTORNEY
   3624 NORTH HILLS DRIVE
   B-100
   AUSTIN, TEXAS 78731
   PHONE: 512-346-8000
   FAX: 512-346-6005

42

1:06CV01964RBW
ET. AL.

4. SHELLEY BUSH MARROW
5. DONITHAN JEWETT
6. CRADY, JEWETT & McCULLEY, LLP
2727 ALLEN PARKWAY, #1700
HOUSTON, TEXAS 77019-2125
PHONE: 713-739-7007
FAX: 713-739-8403

7. DAVID B. ARMBRUST
8. GREGORY S. CAGLE
9. ARMBRUST&BROWN, LLP
100 CONGRESS AVE. #1300
AUSTIN, TEXAS 78701

10. TODD A. REED
11. ANDRITHA (ANDY) SARWAL
12. JACKSON WALKER, LLP
100 CONGRESS AVE. #1100
AUSTIN, TEXAS 78701

43

1:06CV01964RBW
1:06CV00967LY-RP

13.   ANDREW **KEVER**, ATTORNEY
14.   GRANDE COMMUNICATIONS
      401 CONGRESS AVE, #2100
      AUSTIN, TEXAS 78701

15    TRACY **CAPE**, DIRECTOR
16    RAY STROMAN, VICE PRESIDENT
17    GRANDE COMMUNICATIONS
      401 CARLSON CIRCLE
      SAN MARCOS, TEXAS 78666

18    SCOTT **GOERES GALLOWAY**
19    PATRICIA GOERES GALLOWAY
20    DOUGLAS G. HOUSER
21    LLOYD BERNSTEIN
22    MAREN HOLMBOE
23    BULLIVANT, HOUSER BAILEY, PC.

      1875 DEAWA DRIVE
      WESTLINN, OREGON 97068
      PHONE: 503-657-4020
24.   3:07 CV00043 KI
25.   2:07 CV02116
            44

1:06 CV 01964 RBW
HUD # 06-06-293-8

26. JOHN **NEAL**, DIRECTOR
DISCIPLINE
STATE BAR OF TEXAS
6300 LA CALMA #300
AUSTIN, TEXAS 78752

27. RYAN **GOERES**, MANAGER
HUNT OIL
415 W WALL ST. #1300
MIDLAND, TEXAS 79701-4417

28. CHESTER E. **BEAVER**
29. ANN MORGAN, HUD #06-06-293-8
ASSISTANT CITY OF AUSTIN
ATTORNEYS
P.O. BOX 1546
AUSTIN, TEXAS 78767

30. FELIX **TARANGO**, ASSISTANT
TRAVIS COUNTY ATTORNEY
31. C-1-CV-06-000678
1:06 CV 2662Y
P.O. BOX 1748 AUSTIN, TX 78767-
45

1:06 CV 01964 RBW
1:06 CV 00967 LY-RP

32.    CASE NO. 041509
       J.P. #3 AND #5
       EVICTION SUIT
       TRIAL JANUARY 26, 2006
33.    VOIR DIRE (POLLUTION)
       BY CHARLES EVANS BROWN ✓

34     FORMER JUSTICE OF THE
       PEACE.
35        MELISSA YOUNG GOODWIN ✓
36.    TEXAS BAR CARD. 00788733
       POTTS & REILLY LLP
       401 WEST 15TH ST.
       SUITE 850
       AUSTIN, TEXAS 78701
       PHONE: 512-469-7474

37.    CONTACT VOIR DIRE - SPEAK TRUTH

38.    HERB EVANS ✓ J.P. #5
39.    HARRIET M. MURRAY J.P. #5
40     TRIAL 01/26/2006
41.    MEGAN M GOERES ✓
              46

1:06 CV 01964 RBW
1:06 CV 00967 LY-RP

Michael Buesgens
MICHAEL L BUESGENS.
EXTENDED STAY AMERICA
MAILING ADDRESS
3112 WINDSOR RD, #A322
AUSTIN, TEXAS 78703
512-339-6005 X 7958
FAX: 512-339-6099
MIKEBUESGENS@HOTMAIL.COM

APRIL 26, 2007

47

1:06 CV 01964 RBW
NO MORE MOL-1800
SEE ORDER APRIL 18, 2007
FROM MOL PANEL

**IV**  VERIFICATION AND DECLARATION
OF
MICHAEL L. BUESGENS

I DECLARE UNDER PENALTY OF
PERJURY THAT THE FOREGOING
HISTORY OF ATTORNEY AND
LAW FIRM AND DEFENDANT-
ENTITIES AND INDIVIDUALS AND
PERSONS MISCONDUCT AND
ADVERSE ACTIONS AND CONCEALING
EVIDENCE AND FACTS IS TRUE

PURSUANT TO 28 USC. SECTION
1746

EXECUTED ON THIS 26 TH DAY OF
APRIL, 2007

*Michael Buesgens*
MICHAEL L BUESGENS

48

1:06 CV 01964 RBW
RELATED
ASSOCIATED
1:06 CV 00967 LY-RP
1:06 CV 00226 LY-RP
1:06 CV 00260 LY
3:07 CV 00043 KI
2:07 CV 02116

# V     EXHIBITS

1. VOIR DIRE - SPEAK THE TRUTH
RETALIATORY EVICTION SUIT
CASE NO. 041509
FILED ON DECEMBER 30, 2005
AT
2. JUSTICE OF THE PEACE, PRECINCT
3, TRAVIS COUNTY, AUSTIN, TEXAS

3. TRIAL JANUARY 26, 2006
AT
4. JUSTICE OF THE PEACE PRECINCT
5, TRAVIS COUNTY, AUSTIN, TEXAS
5. JUDGE HARRIET M. MURPHY
6. PRESIDING - ATTORNEY CHARLES
EARS BROWN SPEAKS

49

1:06 CV 01964 RBW

EXHIBITS CONTINUED

RETALIATORY EVICTION SUIT
CASE NO. 041509

7. MELISSA YOUNG GOODWIN
JUSTICE OF THE PEACE, PRECINCT
3, AUSTIN, TEXAS

8.                 NOW WORKS AT
POTTS & REILLY, LLP
401 WEST 15TH ST., SUITE 850
AUSTIN, TEXAS  78701
PHONE: 512-469-7474
FAX: 512-469-7480

9. HERBERT E. EVANS
JUSTICE OF THE PEACE, PRECINCT
5, AUSTIN, TEXAS

10. MELISSA YOUNG GOODWIN
TEXAS BAR CARD  06788733

11. HERBERT E. EVANS
TEXAS BAR CARD NO. 06718000
50

1:06 CV 01964 RBW

EXHIBITS CONTINUED

12. ANIMAL ADDENDUM

13. LARGE ANIMAL DOG-WEIMARNER
A HIGH ENERGY ANIMAL.

14. MEGAN MOUIQUE GOERES
APARTMENT 1033

15. FALCON RIDGE APARTMENTS
500 EAST STASSNEY
AUSTIN, TEXAS 78745
PHONE: 512-326-5000    AUSTIN
FAX: 512-322-1557    TEXAS

16. PHONE: 713-
HOUSTON, TEXAS

17. PET-ANIMAL ADDENDUM DATE
12/28/2005

18. NO PET ADDENDUM
FOR

19. JULY 28, 2005 THROUGH DECEMBER
28, 2005

51



1:06 CV 01964 RBW

EXHIBITS CONTINUED

20. MEGAN MONIQUE GOERES
                AND
21. SHELLEY BUSH MARMON
22. DONIMN JEWETT
23. CRADY, JEWETT & MCCULLEY, LLP
                AND
24. DAVID B. ARMBRUST
25. GREGORY S. CAGLE
26. ARMBRUST & BROWN, LLP

27. DISCOVERY - PRODUCTION OF
DOCUMENTS IN CIVIL
NO. 1:06 CV00226 LY-RP
U.S. DISTRICT COURT, AUSTIN, TEXAS
28. JUDGE EARL LEROY YEAKEL, III
29. MAGISTRATE JUDGE ROBERT L.
PITMAN - FORMER ASSISTANT U.S.
ATTORNEY - AUSTIN, TEXAS
30. FAILED TO PROVIDE ANIMAL
ADDENDUM FOR JULY 28, 2005
THROUGH DECEMBER 28, 2005

52

1:06 CV 01964 RBW

EXHIBITS CONTINUED

31. APARTMENT LEASE CONTRACT
DATED: 12/28/2005

32. BUT NO CONTRACT OR
ANIMAL ADDENDUM FOR
MEGAN MONIQUE GOERES

33. MOVE IN AT FALCON RIDGE
APARTMENTS JULY 28, 2005
THROUGH DECEMBER 28, 2005

34. CIVIL NO. 1:06 CV 00260 LY

35. CIVIL NO. 1:06 CV 00226 LY-RP

36. JUDGE EARL LEROY YEAKEL III

37. JUDGE ROBERT L. PITMAN

38. WERE AWARE OF THE FOREGOING
MISLEADING DISCOVERY-PRODUCTION
OF DOCUMENTS

39. 1:06 CV 00260 LY - REMAND
05/24/2006

40. 1:06 CV 00226 LY-RP - CLOSED
12/06/2006 AND 12/20/2006

53

1:06 CV 01964 RBW

EXHIBITS CONTIUUED

TRAVIS COURTY
AUSTIN TEXAS
STATE OF TEXAS
JUDGES

41. MELISSA YOUNG GOODWIN
CASE NO. 041509

42. HERBERT E. EVANS
CASE NO. 041509

43. NIGEL GUSOORF
CASE NO. 041509

44. HARRIET M. MURPHY
CASE NO. 041509

45. J. DAVID PHILLIPS
CAUSE NO. C-1-CV-06-000678

54

1:06 CV 01964 RBW

EXHIBITS CONTINUED

46. ROBERT HARRISON PEMBERTON
THIRD COURT OF APPEALS
CASE NO. 03:06-000614 CV

EARL LEROY YENKEL, III
CIVIL NO. 1:06 CV 00 1260 LY

47. SCOTT H. JENKINS
53 RD AND 200 TH JUDICIAL
DISTRICT
CASE NO. 0-1-GN-06-000262

EARL LEROY YENKEL, III
CIVIL NO. 1:06 CV 00226 LY-RP

55

✓ = Jurors selected

**CAUSE # 041509 Falcon Ridge Apartments VS. Michael L. Swagans**

| | | | | |
|---|---|---|---|---|
| 20 JOLYNN JANELL PEREZ | 19 BRENT CARLYLE POHL — *Excused* | 18 BETTY CRAWFORD | 17 MARIANN JOHNSTON | 16 HILARY LYN REYES |
| 15 ALAN ROSWELL WERNER — *Excused* | 14 RACHEL ANN ATTEBURY — *Excused* | 13 MADELON UNRUH | 12 GARY PAUL DAVIS | 11 CATHERINE BROWN SPENCER ✓ |
| 10 KENNETH WAYNE GOHEEN — *Excused* | 09 RAMON HERRERA — *No Show* | 08 JAMES PATRICK OGRADY ✓ | 07 EXCUSED | 06 AMANDA DANIELLE VELA ✓ |
| 05 SCOTT BROWNING COOMBES | 04 EXCUSED | 03 ANGEL GUILLERMO CORTINA ✓ | 02 LAUREN A DAVIS ✓ | 01 DARLENE JONES ✓ |

VOIR DIRE
CASE NO.
041509
TRIAL
01/26/06
J.P. # 5
TRAVIS
COUNTY
AUSTIN
TEXAS
ATTORNEY
CHARLES
EADS
BROWN
JUDGE
HARRIET
M
MURPHY

Jan 26, 2006
9:15 AM



**TEXAS APARTMENT ASSOCIATION**

TEXAS APARTMENT ASSOCIATION

**MEGAN GOERES**

Austin
Apartment
Association

**GREYSTAR - GREP**

### Animal Addendum

Date: **December 28, 2005** ✓
(when this Addendum is filled out)

*Please note: We consider animals a serious responsibility and a risk to each resident in this dwelling. If you do not properly control and care for an animal, you'll be held liable if it causes any damage or disturbs other residents.*

1. **DWELLING UNIT DESCRIPTION.** Unit No.
**327** , at **500 East Stassney Lane**
(street address)
in **Austin** (city),
Texas, **78745** (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: **December 28, 2005**
Owner's name: **Falcon Ridge**

Residents (list all residents): **Megan Goeres** ✓

The Lease Contract is referred to in this Addendum as the "Lease Contract."

3. **CONDITIONAL AUTHORIZATION FOR ANIMAL.** ✓ You may keep the animal that is described below in the dwelling until the Lease Contract expires. But we may terminate this authorization sooner if your right of occupancy is lawfully terminated or if in our judgment you and your animal, your guests, or any occupant violate any of the rules in this Addendum.

4. **ANIMAL DEPOSIT.** An animal deposit of $ **0.00** will be charged. The deposit is due at the time you sign this Addendum. This animal deposit will increase the total security deposit under the Lease Contract. We will consider this additional security deposit a general security deposit for all purposes. Refund of the security deposit will be subject to the terms and conditions set forth in the Lease Contract. The additional security deposit is not refundable before all residents surrender the premises, even if the animal has been removed.

5. **SUPPORT ANIMALS.** We may require a written statement from a qualified professional verifying the need for a support animal for a disabled (handicapped) person. We will not charge an animal deposit for any authorized support animal.

6. **ADDITIONAL MONTHLY RENT.** Your total monthly rent (as stated in the Lease Contract) will be increased by $ **0.00** .

7. **ADDITIONAL FEE.** You must also pay a one-time non-refundable fee of $ **250.00** for having the animal in the dwelling unit. The fee is due at the time you sign this Addendum.

8. **LIABILITY NOT LIMITED.** The additional monthly rent and additional security deposit under this Animal Addendum do not limit residents' liability for property damages, cleaning, deodorization, defleaing, replacements, or personal injuries.

9. **DESCRIPTION OF ANIMAL.** You may keep only the animal described below. You may not substitute any other animal for this one. Neither you nor your guests or occupants may bring any other animal--mammal, reptile, bird, amphibian, fish, rodent, arachnid, or insect--into the dwelling or apartment community.

Animal's name: **Harley**
Type: **Canine**
Breed: **Weimaraner** ✓

**Megan Goeres**
Copyright 2005, Texas Apartment Association, Inc.

Color: **Slate Grey**
Weight: **55lbs**
City of license: **Austin** Age: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? **yes**
Animal owner's name: **Megan Goeres**

10. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
**Limit of 2 pets per apartment.**

11. **EMERGENCY.** In an emergency involving an accident or injury to your animal, we have the right, but not a duty, to take the animal to the following veterinarian for treatment, at your expense.
Doctor: _____
Address: _____
City/State/Zip: _____
Phone: _____

12. **ANIMAL RULES.** You are responsible for the animal's actions at all times. You agree to abide by these rules:

- The animal at all times must have current rabies shots and licenses required by law. You must show us evidence of the above if requested.

- The animal must not disturb the neighbors or other residents, regardless of whether the animal is inside or outside the dwelling. ✓

- Dogs, cats, and support animals must be housebroken. All other animals must be caged at all times. No animal offspring are allowed.

- Inside, the animal may urinate or defecate only in these designated areas: **Litter box**

- Outside, the animal may urinate or defecate only in these designated areas: **designated areas**

- Animals may not be tied to any fixed object anywhere outside the dwelling units, except in fenced yards (if any) for your exclusive use.

- You must not let an animal other than support animals into swimming-pool areas, laundry rooms, offices, clubrooms, other recreational facilities, or other dwelling units.

- Your animal must be fed and watered inside the dwelling unit. Don't leave animal food or water outside the dwelling unit at any time, except in fenced yards (if any) for your exclusive use.

- You must keep the animal on a leash and under your supervision when outside the dwelling or any private fenced area. We or our representative may pick up unleashed animals and/or report them to the proper authorities. We'll impose reasonable

**1228200509450**7 Page 1 of 2

**AUSTIN APARTMENT ASSOCIATION**

charges for picking up and/or keeping unleashed animals.

- Unless we have designated a particular area in your dwelling unit or on the grounds for animal defecation and urination, you are prohibited from letting an animal defecate or urinate *anywhere* on our property. You must take the animal off our property for that purpose. If we allow animal defecation inside the dwelling unit in this Addendum, you must ensure that it's done in a litter box with a kitty litter-type mix. If the animal defecates anywhere on our property (including in a fenced yard for your exclusive use), you'll be responsible for immediately removing the waste and repairing any damage. Despite anything this Addendum says, you must comply with all local ordinances regarding animal defecation.

13. **ADDITIONAL RULES.** We have the right to make reasonable changes to the animal rules from time to time if we distribute a written copy of any changes to every resident who is allowed to have animals.

14. **VIOLATION OF RULES.** If you, your guest, or any occupant violates any rule or provision of this Animal Addendum (based upon our judgment) and we give you written notice, you must remove the animal immediately and permanently from the premises. We also have all other rights and remedies set forth in paragraph 27 of the Lease Contract, including damages, eviction, and attorney's fees.

15. **COMPLAINTS ABOUT ANIMAL.** If we give you written notice, you must immediately and permanently remove the animal from the premises if we receive a reasonable complaint from a neighbor or other resident or if we, in our sole discretion, determine that the animal has disturbed neighbors or other residents.

16. **OUR REMOVAL OF ANIMAL.** In some circumstances, we may enter the dwelling unit and remove the animal with one day's notice left in a conspicuous place. We can do this if, in our sole judgment, you have:

- abandoned the animal;
- left the animal in the dwelling unit for an extended period of time without food or water;
- failed to care for a sick animal;
- violated our animal rules; or
- let the animal defecate or urinate where it's not supposed to.

In doing this, we must follow the procedures of paragraphs 27 and 28 of the Lease Contract, and we may turn the animal over to a humane society or local authority. We'll return the animal to you upon request if we haven't already turned it over to a humane society or local authority. We don't have a lien on the animal for any purpose, but you must pay for reasonable care and kenneling charges for the animal. If you don't pick up the animal within 5 days after we remove it, it will be considered abandoned.

17. **LIABILITY FOR DAMAGES, INJURIES, CLEANING, ETC.** You and all co-residents will be jointly and severally liable for the entire amount of all damages caused by the animal, including all cleaning, defleaing, and deodorizing. This provision applies to all parts of the dwelling unit, including carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, as well as landscaping and other outside improvements. If items cannot be satisfactorily cleaned or repaired, you must pay for us to replace them completely. Payment for damages, repairs, cleaning, replacements, etc. are due immediately upon demand.

As owner of the animal, you're strictly liable for the entire amount of any injury that the animal causes to a person or anyone's property. You'll indemnify us for all costs of litigation and attorney's fees resulting from any such damage.

18. **MOVE-OUT.** When you move out, you'll pay for defleaing, deodorizing, and shampooing to protect future residents from possible health hazards, regardless of how long the animal was there. We—not you—will arrange for these services.

19. **MULTIPLE RESIDENTS.** Each resident who signed the Lease Contract must sign this Animal Addendum. You, your guests, and any occupants must follow all animal rules. Each resident is jointly and severally liable for damages and all other obligations set forth in this Animal Addendum, even if the resident does not own the animal.

20. **GENERAL.** You acknowledge that no other oral or written agreement exists regarding animals. Except for special provisions noted in paragraph 9 above, our representative has no authority to modify this Animal Addendum or the animal rules except in writing, as described under paragraph 12. This Animal Addendum and the animal rules are considered part of the Lease Contract described above. It has been executed in multiple originals, one for you and one or more for us.

**You are legally bound by this document. Please read it carefully.**

Resident or Residents
*(All residents must sign)*

Owner or Owner's Representative
*(Signs below)*

_____

_____

_____

*You are entitled to receive an original of this Animal Addendum after it is fully signed. Keep it in a safe place.*

SAMANTHA SHEPPARD

GREYSTAR -GREP

Megan Gooree

1228200509450S

TAA Official Statewide Form 05-E, Revised October, 2005
Copyright 2005, Texas Apartment Association, Inc. 



**TEXAS APARTMENT ASSOCIATION**

**Apartment Lease Contract**



**Austin Apartment Association**

This Lease Contract is only valid if filled out before January 1, 2008.

Date of Lease Contract: **December 28, 2005**
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract is between you, the resident(s) *(list all people signing the Lease Contract):* **Megan Geores**

**Falcon Ridge** _____ and us, the owner: _____

*(name of apartment community or title holder).* You've agreed to rent Apartment No. **327** , at **500 East Stassney Lane** *(street address)* in **Austin** *(city),* Texas, **78741** *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor must be executed.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **7** consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the **28th** day of **December** , **2005** *(year),* and ends at midnight the **23rd** day of **July** , **2006** *(year).* This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 37. *If the number of days isn't filled in, at least 30 days notice is required.*

**4. SECURITY DEPOSIT.** The total security deposit for all residents is $ **0.00** , due on or before the date this Lease Contract is signed. This amount *[check one]:* ☐ does or ☒ does not include an animal deposit. Any animal deposit will be stated in an animal addendum. See paragraphs 41 and 42 for security deposit return information.

**5. KEYS AND FURNITURE.** You will be provided **1** apartment key(s), **1** mailbox key(s), and **1** other access devices for **Gatecard(s)**. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order to not enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices. Your apartment will be *[check one]:* ☐ furnished or ☒ unfurnished.

**6. RENT AND CHARGES.** You will pay $ **785.00** per month for rent, in advance and without demand *[check one]:*
☒ at the on-site manager's office, or
☒ at **24 Hour Night Drop Box**

Prorated rent of $ **101.29** is due for the remainder of *[check one]:*
☒ 1st month or ☐ 2nd month, on _____ *(year).* Otherwise, you must pay your rent on or before the 1st day of each month *(due date)* with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the **2nd** day of the month and we haven't given notice to vacate before that date, you'll pay an initial late charge

of $ **50.00** plus a late charge of $ **10.00** per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ **50.00** for each returned check or rejected automatic electronic draft, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under state law and this Lease Contract will be authorized. If you violate the animal restrictions of paragraph 27 or other animal rules, you'll pay an initial charge of $ **100.00** per animal *(not to exceed $100 per animal)* and a daily charge of $ **10.00** per animal *(not to exceed $10 per day per animal)* from the date the animal was brought into your apartment until it is finally removed. We'll also have all other remedies for such violation.

**7. UTILITIES.** We'll pay for the following items, if checked: ☐ gas ☐ water ☐ wastewater ☐ electricity ☐ trash ☐ cable TV ☐ master antenna ☐ Internet service ☐ other utilities
You'll pay for all other utilities, related deposits, and any charges or fees, on such utilities during your Lease Contract term. You must not allow any utilities (other than cable TV) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease Contract term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules. If a utility is individually metered, it must be connected in your name and you must notify the utility provider of your move-out date to have the utility timely read. If you delay getting it turned on in your name by lease commencement or cause it to be transferred back into our name before you surrender or abandon the unit, you'll be liable for a $ **50.00** charge *(not to exceed $50),* plus the actual or estimated cost of the utilities used while the utility should have been connected in your name. If you are in an area open to competition and your unit is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

**8. INSURANCE.** Our insurance does not cover your personal property. We urge you to get insurance for losses due to theft, fire, water damage, and the like. You intend to *[check one]:*
☒ not buy insurance to protect against such losses, or
☐ buy insurance from your own agent to cover such losses.
*If neither is checked, you acknowledge that you have not insurance coverage.*

**9. SECURITY DEVICES. What We Must Provide.** Texas law requires, with some exceptions, that we must provide at no cost to you when occupancy begins: (1) a window latch on each window; (2) a doorviewer (peephole) on each exterior door; (3) a pin lock on each sliding door; (4) either a door handle latch or a security bar on each sliding door; (5) a keyless bolting device (deadbolt) on each exterior door; and (6) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by statute. If we fail to install or rekey security devices as required by the Property Code, you have the right to do so and deduct the reasonable cost from your next rent payment under Section 92.165(1) of the Code.

**What You Are Now Requesting.** Subject to some limitations, under Texas law you may at any time ask us to: (1) install new keyed deadbolt lock on an exterior door if it does not have one; (2) install a security bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We must comply with those requests, but you must pay for them. Subject to statutory restrictions on what security devices you may request, you are now requesting us to install or change at your expense:

*If no item is filled in, then you are requesting none at this time.*

**Payment.** We will pay for missing security devices that are required by statute. You will pay for: (1) rekeying that you request *(except when we failed to rekey after the previous resident moved out);* and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done unless state statute authorizes advance payment. You also must pay for additional or changed security devices you request, in advance or afterward, at our option.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

**A $175.00 non-refundable administrative fee has been paid. Checks will not be accepted for rental payments after the 19th of the month.**

**11. UNLAWFUL EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable for a reletting charge of $ **667.25** *(not to exceed 85% of the highest monthly rent during the Lease Contract term)* if you:
(1) fail to move in, or fail to give written move-out notice as required in paragraphs 23 or 37; or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.
*The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. See the first paragraph of paragraph 32.*

Megan Geores
Your initials: _____ Initials of Our Representative: _____

Apartment Lease Contract    © 2005, Texas Apartment Association, Inc.    Page 1 of 6

12282005094501

**Not a Release.** The reletting charge is not a Lease Contract cancellation or buyout fee. It is a liquidated amount covering our part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to make ready, inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

**12. DAMAGES AND REIMBURSEMENT.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to: a violation of the Lease Contract or rules; improper use; negligence; other conduct by you or your invitees, guests or occupants; or any other cause not due to our negligence or fault. You will indemnify and hold us harmless from all liability arising from the conduct of you, your invitees, guests, or occupants, or our representatives who perform at your request services not contemplated in this Lease Contract. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** All property in the apartment is (unless exempt under Section 54.042 of the Texas Property Code) subject to a contractual lien to secure payment of delinquent rent. For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After We Exercise Lien for Rent.** If your rent is delinquent, our representative may peaceably enter the apartment and remove and/or store all property subject to lien. Written notice of entry must be left afterwards in the apartment in a conspicuous place—plus a list of items removed. The notice must state the amount of delinquent rent and the name, address, and phone number of the person to contact about the amount owed. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid. All property in the apartment is presumed to be yours unless proven otherwise.

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 42).

**Storage.** We will store property removed under a contractual lien. We may, but have no duty to, store property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: Our lien on property listed under Property Code Section 54.042 is limited to charges for packing, removing, and storing.

**Redemption.** If we've seized and stored property under a contractual lien for rent as authorized by the Property Code, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (set forth as follows) is given before you seek redemption, you may redeem only by paying the delinquent rent and reasonable charges for packing, removing, and storing. If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc. We may return

redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 hour after writ of possession is executed, following judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent to both your regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies, and duties under paragraphs 11 and 32 apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37. The written move-out notice under paragraph 37 applies only to the end of the current Lease Contract or renewal period.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the Lease Contract begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the effective Lease Contract date and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new effective Lease Contract date for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may furnish us information about pending or actual connections or disconnections of utility service to your unit.

**18. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all other common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or heaters without our prior written approval; cook on balconies or outside; or solicit

business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

**20. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: criminal conduct; behaving in

12282005094502

a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; using windows for entry or exit; heating the apartment with a gas-operated cooking stove or oven; or injuring our reputation by making bad faith allegations against us to others.

21. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed according to state law at the owner or operator's expense at any time if it:

(1)  has a flat tire or is otherwise inoperable; or
(2)  is on jacks, blocks or has wheel(s) missing; or
(3)  takes up more than one parking space; or
(4)  belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(5)  is in a handicap space without the legally required handicap insignia; or
(6)  is in a space marked for office visitors, managers, or staff; or
(7)  blocks another vehicle from exiting; or
(8)  is in a fire lane or designated "no parking" area; or
(9)  is in a space marked for other resident(s) or unit(s); or
(10) is on the grass, sidewalk, or patio; or
(11) blocks garbage trucks from access to a dumpster; or
(12) has no current license, registration or inspection sticker, and we give you at least 10 days notice that the vehicle will be towed if not removed.

22. **RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31, or 37, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, death, or property purchase.

23. **MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1)  you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and
(2)  you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have a deployment or change-of-station order; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 33. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-stationorders.

24. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, door and window locks, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 5. Window screens are not for security or keeping people from falling out.

**Smoke Detectors.** We'll furnish smoke detectors as required by statute or city ordinance, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector malfunctions to us. Neither you nor others may disable smoke detectors. *If you damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us under Section 92.2611 of the Property Code for $100 plus one month's rent, actual damages, and attorney's fees.* You also will be liable to us and others if: (1) you fail to report malfunctions or (2) any loss, damage, or fines result from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless

we instruct otherwise, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obligated to furnish security personnel, patrols, lighting, gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

25. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. Within 48 hours after move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not do any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

26. **REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty insurance proceeds are received. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract by giving you at least 5 days written notice. We may also remove damaged personal property if it causes a health or safety hazard. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

27. **ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum and pay an animal deposit. An animal deposit is considered a general security deposit. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation                    1228200509450 3

**Megan Scoras**

Your initials: _____ Initials of Our Representative _____            Apartment Lease Contract        © 2005, Texas Apartment Association, Inc.      Page 3 of 6

charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:

(1)  written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and

(2)  entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; checking for water leaks; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or

rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government representatives for the limited purpose of determining housing and fire ordinance compliance, and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**29. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease Contract will indemnify the non-defaulting residents and their guarantors. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

<table><tr><td>Replacements</td></tr></table>

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(1)  a reletting charge will not be due;
(2)  a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; and
(3)  the departing and remaining residents will remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

Procedures for Replacement. If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree in writing—even if a new Lease Contract is signed.

<table><tr><td>Default by Either Party</td></tr></table>

**31. DEFAULT BY OWNER.** We'll act with customary diligence to:

(1)  keep common areas reasonably clean, subject to paragraph 25;
(2)  maintain fixtures, hot water, heating, and A/C equipment;
(3)  substantially comply with all applicable laws regarding safety, sanitation, and fair housing; and
(4)  make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may possibly terminate this Lease Contract and exercise other remedies under Property Code Section 92.056 by following this procedure:

(a)  all rent must be current and you must make a written request for repair or remedy of the condition—after which we'll have a reasonable time for repair or remedy;
(b)  if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)—after which we'll have a reasonable time for repair or remedy; and
(c)  if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease Contract by giving us a final written notice. You also may exercise other statutory remedies.

Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, or by registered mail—after which we'll have a reasonable time for repair or remedy. "Reasonable time" takes into account the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current at the time of any request. We will refund security deposits and prorated rent as required by law.

**32. DEFAULT BY RESIDENT.** You'll be in default if: (1) you don't pay rent or other amounts that you owe on time; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (i) a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (ii) any sex-related crime, including a misdemeanor; (6) any illegal drugs or paraphernalia are found in your apartment; or (7) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

Eviction. If you default, we may end your right of occupancy by giving you a 24-hour written notice to vacate. Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the apartment to any occupant over 16 years old; or (5) affixing the notice to the inside of the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing

acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages, past or future rent or other sums, or to continue with eviction proceedings.

Acceleration. All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; and (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

Holdover. You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the Lease Contract term—for up to one month from the date of notice of Lease Contract extension—by delivering written notice to you or your apartment while you continue to hold over.

Other Remedies. If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless government regulations provide otherwise. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amount stated in the rental discounts or concessions agreed to in writing, in addition to other sums due. Upon your default, we have all other legal remedies, including Lease Contract termination and statutory lockout under Section 92.0081 of the Property Code. Unless a party is seeking exemplary, punitive, sentimental, or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. We may recover attorney's fees in connection with enforcing our rights under this Lease Contract. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

Mitigation of Damages. If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

Megan Georce

Your Initials: _____, Initials of Our Representative: _____

Apartment Lease Contract    © 2005, Texas Apartment Association, Inc.    Page 4 of 6

12282005094504

## General Clauses

**33. MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given, as well as any fax transmittal verification. Fax signatures are binding. All notices must be signed. Notices may not be given by email.

Exercising one remedy won't constitute an election or waiver of other remedies. Insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or understand. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

We may deactivate or not install keyless bolting devices on your doors if: (1) you or an occupant in the dwelling is over 55 or disabled, and (2) the requirements of Section 92.153(e) or (f) of the Property Code are satisfied.

Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

Residents may have rights under Texas law to terminate the lease in certain situations involving family violence or a military deployment or transfer.

**34. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After due date, we do not have to accept the rent or any other payments.

**35. TAA MEMBERSHIP.** We represent that, at the time of signing this Lease Contract or a Lease Contract Renewal Form: (1) we; (2) the management company that represents us; or (3) any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/management company member or an associate member doing business as a locator service (whose name and address is disclosed on page 6). If not, the following applies: (1) this Lease Contract is voidable at your option and is unenforceable by us (except for property damages); (2) we may not recover past or future rent or other charges; and (3) we will be in violation of the Texas Penal Code and the Texas Deceptive Trade Practices Act. The above remedies also apply if both of the following occur: (1) the Lease Contract is automatically renewed on a month-to-month basis two or more times after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association at the time of the third automatic renewal. A signed affidavit from the local affiliated apartment association which attests to non-membership when the Lease Contract or renewal was signed will be conclusive evidence of non-membership. The Lease Contract is voidable at your option if the Lease Contract or any lease addendum (that is a copyrighted TAA form) fails to show at the bottom of each page the name of all original residents listed in paragraph 1, or contains the same form identification code as any other resident's Lease Contract or lease addendum or if your TAA Rental Application contains the same form identification code as any other resident's Rental Application. Governmental entities may use TAA forms if TAA agrees in writing.

**TAA**

## Security Guidelines for Residents

**36. SECURITY GUIDELINES.** We care about your safety and that of other occupants and guests. No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

Inform all other occupants in your dwelling, including any children you may have, about these guidelines. We recommend that all residents and occupants use common sense and follow crime prevention tips, such as those listed below:

- In case of emergency, call 911. Always report emergencies to authorities first and then contact the management.

- Report any suspicious activity to the police first, and then follow up with a written notice to us.

- Know your neighbors. Watching out for each other is one of the best defenses against crime.

- Always be aware of your surroundings and avoid areas that are not well-traveled or well-lit.

- Keep your keys handy at all times when walking to your car or home.

- Do not go inside if you arrive home and find your door open. Call the police from another location and ask them to meet you before entering.

- Make sure door locks, window latches and sliding glass doors are properly secured at all times.

- Use the keyless deadbolt in your unit when you are at home.

- Don't put your name or address on your key ring or hide extra keys in obvious places, like under a flower pot. If you lose a key or have concerns about key safety, we will rekey your locks at your expense, in accordance with paragraph 9 of the Lease Contract.

- Check the door viewer before answering the door. Don't open the door if you don't know the person or have any doubts. Children who are old enough to take care of themselves should never let anyone inside when home without an adult.

- Regularly check your security devices and smoke detector to make sure they are working properly. Smoke detector batteries should be tested monthly and replaced at least twice a year.

- Immediately report in writing (dated and signed) to us any needed repairs of security devices, doors, windows, smoke detectors, as well as any other malfunctioning safety devices on the property, such as broken access gates, burned out exterior lights, etc.

- If your doors or windows are not secure due to a malfunction or break-in, stay with a friend or neighbor until the problem is fixed.

- When you leave home, make sure someone knows where you're going and when you plan to be back.

- Lock your doors and leave a radio or TV playing softly while you're gone. Close curtains, blinds and window shades at night.

- While gone for an extended period, secure your home and use lamp timers. Also stop all deliveries (such as newspaper and mail) or have these items picked up daily by a friend.

- Know at least two exit routes from your home, if possible.

- Don't give entry keys, codes or gate access cards to anyone.

- Always lock the doors on your car, even while driving. Take the keys and remove or hide any valuables. Park your vehicle in a well-lit area.

- Check the backseat before getting into your car. Be careful stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

There are many other crime prevention tips readily available from police departments and others.

## When Moving Out

**37. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 22) except under the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3 or in special provisions—even if the Lease Contract has become a month-to-month lease. If a move-out notice is received on the first, it will suffice for move-out on the last day of the month of intended move-out, provided that all other requirements below are met.

- The move-out date in your notice (check one) ☐ must be the last day of the month; or ☒ may be the exact day designated in your notice. If neither is checked, the second applies.

- Your move-out notice must be in writing. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice will not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

- If we require you to give us more than 30 days written notice to move out before the end of the lease term, we will give you a written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-outnotice.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

Megan Geores

Your Initials _____   Initials of Our Representative: _____

Apartment Lease Contract   © 2008, Texas Apartment Association, Inc.   Page 5 of 6

12282005094505

**38. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**39. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**40. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**41. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-

related charges under paragraphs 6 and 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 32; and (3) a reletting fee if you have violated paragraph 11.

**42. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid—whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everybody appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

## Signatures, Originals and Attachments

**43. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☐ Access Gate Addendum
☐ Additional Special Provisions
☐ Animal Addendum
■ Apt. Rules or Community Policies
☐ Asbestos Addendum (if asbestos is present)
☐ Early Termination Addendum
☐ Enclosed Garage, Carport or Storage Unit Addendum
■ Inventory & Condition Form
☐ Intrusion Alarm Addendum
☐ Lead Hazard Information and Disclosure Addendum
☐ Lease Contract Guaranty (_____ guaranties, if more than one)
☐ Legal Description of Unit (if rental term longer than one year)
☐ Military SCRA Addendum
■ Mold Information and Prevention Addendum
☐ Move-Out Cleaning Instructions
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity: _____ )
☐ Rent Concession Addendum
☐ Repair or Service Request Form
☐ Satellite Dish or Antenna Addendum
☐ TCEQ Tenant Guide to Water Allocation
☐ Utility Allocation Addendum for: ☐ electricity ☐ water ☐ gas ☐ central system costs ☐ trash removal ☐ cable TV
☐ Utility Submetering Addendum for: ☐ electricity ■ water ☐ gas
■ Other **Greystar Master Addendum**
☐ Other

*Name and address of locator service (if applicable)*

**You are legally bound by this document. Please read it carefully.**

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

You are entitled to receive an original of this Lease Contract after it is fully signed. Keep it in a safe place.

*Resident or Residents (all sign below)*

MEGAN MONIQUE GOERES                                    *Date signed*

_____                       *Date signed*

_____                       *Date signed*

_____                       *Date signed*

*Owner or Owner's Representative (signing on behalf of owner)*

*Address and phone number of owner's representative for notice purposes*

500 E. Stassney Lane

Austin, TX 78745

(512) 326-5000

*Date form is filled out (same as on top of page 1)* 12/28/2005

SAMANTHA SHEPPARD

1228200509450 6

Megan Goeres
Falcon Ridge
Apartment Lease Contract    TAA Official Statewide Form 05-A/B-1/B-2; Revised October, 2005; Copyright 2005, Texas Apartment Association, Inc.    Page 6 of 6

GREYSTAR-GREA
TEXAS APARTMENT ASSOCIATION- TAA

*SHELLEY BUSH MARMON*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHAEL L. BUESGENS<br>Plaintiff | § § § | |
| V. | § § | CAUSE NO. A-06-CA-226-LY ✓ |
| FALCON RIDGE APARTMENTS,<br>FALCON APARTMENTS OF AUSTIN,<br>LTD., FALCON APARTMENTS OF<br>AUSTIN I, INC., GREYSTAR PROPERTY<br>MANAGEMENT, DEBI WEHMEIER,<br>MANDY ROGERS AND<br>AMANDA WILSON<br>Defendants | § § § § § § § § § | *MEGAN GOERES*<br>*ANDY SARWAL*<br>*SCOTT GALLOWAY*<br>*RYAN GOERES*<br>*PATRICIA GOERES*<br>*GALLOWAY* |

## MEGAN GOERES' RESPONSE TO SUBPOENA IN A CIVIL CASE

COME NOW Megan Goeres ("Goeres") and responds in writing to the subpoena served upon her in the referenced case in compliance with Rule 45. Megan Goeres is not a party to this case. In compliance with the subpoena, Megan Goeres attaches copies of the documents responsive to the subpoena to this Response.

1. Weimaraner purchase and sale receipt (the dog that resided in Apartment 1033 directly above Buesgens [sic] apartment 1023 at Falcon Ridge Apartments in 2005). *ANDY SARWAL*

    **ANSWER:** Objection to the extent this request includes, or responsive documents may also include, confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres will supplement.

2. Weimaraner dog registration license and vaccination record from date of purchase to present (July, 2006). *ANDY SARWAL*

    **ANSWER:** Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the

- 1 -

responsive documents under Tab 2, which have been redacted to withhold production of information subject to the foregoing objection.

*SHELLEY BUSH MARMOU*

3.    Your residential lease agreement immediately prior to your original move in at Falcon Ridge Apartments.

**ANSWER:**    Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 3, which have been redacted to withhold production of information subject to the foregoing objection.

*NOT RESPONSIVE*

4.    Your 2005 residential lease agreements at Falcon Ridge Apartments and addendums.

**ANSWER:**    Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 4, which have been redacted to withhold production of information subject to the foregoing objection.

*NOT RESPONSIVE    OCTOBER, 2005*

5.    Your 2006 residential lease agreements at Falcon Ridge Apartments and addendums.    *PET ADDENDUM JULY, 2005 WHERE IS IT*

**ANSWER:**    Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 5, which have been redacted to withhold production of information subject to the foregoing objection.

6.    2005 and 2006 correspondence, writing or typed documents or emails that you received from anyone at Falcon Ridge Apartments or Greystar Management Services, L.P. and their agents and attorneys in 2005 and 2006.

**ANSWER:**    Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the

-2-

responsive documents under Tab 6, which have been redacted to withhold production of information subject to the foregoing objection.

7.      Correspondence, writings, typed and emails that you sent to anyone that relates to the litigation and complaints that Buesgens had and has with Falcon Ridge Apartments and you and your Weimaraner dog.

**ANSWER:**    Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 7, which have been redacted to withhold production of information subject to the foregoing objection.

8.      Correspondence from and to Charles E. Brown, attorney for Falcon Ridge Apartments and Greystar Management Services, L.P.

**ANSWER:**    None.

9.      Correspondence – writings, emails that you sent to your mother and father and brother or anyone else that relates to the litigation and complaints Buesgens had against you and your Weimaraner dog that began in November, 2005.

**ANSWER:**    None.    *SCOTT GALLOWAY*
*PATRICIA GOERES GALLOWAY*

10.     Copy of warnings that you received from Falcon Ridge Apartments and Greystar Management Services, L.P. about complaints made against you or your dog in 2005 and 2006.

**ANSWER:**    None.

11.     A copy of the document that indicates the exact date you moved into Falcon Ridge Apartments in 2005.

**ANSWER:**    See response to Request No. 1.

12.     A copy of the document that indicates the exact date your Weimaraner dog moved into apartment 1033 at Falcon Ridge Apartments.

*NOT RESPONSIVE*

- 3 -

**ANSWER:**  Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 12, which have been redacted to withhold production of information subject to the foregoing objection.

*NOT RESPONSIVE*

13.    A copy of the document that indicates the exact date you moved out of apartment 1033 and into apartment 327 at Falcon Ridge Apartments.

**ANSWER:**  Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 13, which have been redacted to withhold production of information subject to the foregoing objection.

14.    A copy of the fees you paid to Falcon Ridge Apartments and Greystar Management Services, L.P. for Weimaraner dog tenancy.

**ANSWER:**    See Response to Request No. 1.

15.    A copy of the document that indicates the size of apartment 1033 and apartment 327.

*NOT RESPONSIVE*

**ANSWER:**    See Response to Request No. 1. To the extent this information is not included in the leases, I do not have that information.

16.    A copy of the document that indicates the consideration you received from Falcon Ridge Apartments and Greystar Management Services, L.P. for your early move out [sic] apartment 1033.

**ANSWER:**  Objection to the extent this request includes, or responsive documents may also include confidential, personal financial information including bank account numbers, driver's license information or social security number. Subject to the foregoing objection, Goeres attaches copies of the responsive documents under Tab 16, which have been redacted to withhold production of information subject to the foregoing objection.

*NOT RESPONSIVE*

- 4 -



State Bar of Texas | Member Directory

Home  Login  Career Center  Calendar  Shopping Cart  Contact Us  Site Map

search

advanced search



Sections & Committees →
Other Bar Groups →
Pro Bono & Community Service →
Client Assistance & Grievance →
Professional Requirements →
News & Publications →
Other Services →
Additional Information for the Public →

About the State Bar →

Leadership

Rules and Procedures

State Bar Departments

Events

Member Directory

Center for Legal History

Employment Opportunities

ABOUT THE STATE BAR  *CASE NO. 041509*

**Home**   **About the State Bar**   Member Directory

## Detailed Result

Melissa Young  Goodwin

**Bar Card Number\*:** 00788733



| | |
|---|---|
| **Work Address** | 401 West 15th St., Suite 850 Austin, TX, 78701 |
| **Work Phone Number** | (512) 469-7474 |
| **Primary Practice Location** | AUSTIN , Texas |

Current Member Status

Eligible To Practice In Texas

License Information

**State Bar Card Number\*:** 00788733
**Texas Licensed\*:**      11/05/1993

Practice Information

Contact Us

Staff Directory



eFiling for Courts ➤

Member Benefits ➤

Marketplace ➤

**Bar Card #**

**First Name**

**Last Name**

Search

**Need a Lawyer?**
Get a Referral

Advanced Search

**Print this page** 🖶
**Bookmark** 📖
**Tell a friend** ✉



**CourtCall**
TELEPHONIC COURT APPEARANCES
888.882.6878

**Life, Health & Disability Insurance for You and Your Family**

Federal Unpublished Opinions
Are You in the Know?
FREE White Paper on this New Ruling
Loislaw™

**Firm:** Potts & Reilly, L.L.P. ✔

**Firm Size:** 6 to 10

**Occupation:** Private Law Practice

**Primary Practice Areas:** Administrative and Public, Appellate, Criminal

*CASE NO. 041509*

**Services Provided:**

| | |
|---|---|
| *Are language translation services available?* | Not Specified |
| *Are hearing impaired translation services available?* | Not Specified |
| *Are ADA accessible client services available?* | Not Specified |

**Assistance available in languages:**
No information reported by attorney

**Courts of Admittance:**

*Federal Courts of Admittance:*
No Federal Courts reported by attorney

*Other Courts of Admittance:*
No information reported by attorney

*Other States Where authorized to practice:*
No Other States reported by attorney

**Education and Certification History**

**Law Schools:**

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| St. Mary's University | 05/1993 | Doctor of Jurisprudence/Juris Doctor (J.D.) |

**Texas Board of Legal Specialization Certifications:**
No profile data on file for Texas Board of Legal Specialization Certification

**Public Disciplinary History**



Home | Login | Career Center | Calendar | Shopping Cart | Contact Us | Site Map

# State Bar of Texas

TexasBarCLE | Texas Bar Journal | Texas Young Lawyers | MyBarPage

search
advanced search



Sections & Committees →
Other Bar Groups →
Pro Bono & Community →
Service
Client Assistance & →
Grievance
Professional Requirements →
News & Publications →
Other Services →
Additional Information →
for the Public
About the State Bar

Leadership

Rules and
Procedures

State Bar
Departments

Events

Member
Directory

Center for Legal
History

Employment
Opportunities

ABOUT THE STATE BAR    *CASE NO. 041509*

**Home    About the State Bar**    Member Directory

Detailed Result

Herbert E. Evans  ✓

**Bar Card Number*:** 06718000  ✓

**Work Address**    1000 Guadalupe St
Austin, TX, 78701

**Work Phone
Number**    (512) 854-9049  ✓

**Primary Practice
Location**

Current Member Status

Eligible To Practice In Texas

License Information

**State Bar Card Number*:**06718000
**Texas Licensed*:**    04/07/1971

Practice Information

State Bar of Texas | Member Directory

## Contact Us
## Staff Directory



eFiling for Courts →
Member Benefits →
Marketplace →



**● FIND A LAWYER**

Bar
Card
#

First
Name

Last
Name

[Search]

## Need a Lawyer?
## Get a Referral



Print this page 🖶
Bookmark 📖
Tell a friend ✉





**CourtCall**
TELEPHONIC COURT APPEARANCES
888.882.6878

**STATE BAR OF TEXAS INSURANCE TRUST**
For More Information
CLICK HERE

Federal Interested Opinions
Are you in the Know?
**FREE White Paper**
on this New Ruling
Loislaw™



| Firm: | Justice of Peace Precinct 5 |
|---|---|
| Firm Size: | None Specified |
| Occupation: | Full-Time Judge |
| Primary Practice Areas: | No information reported by attorney |

*CASE NO. 041509*

Services Provided:

| | |
|---|---|
| *Are language translation services available?* | Not Specified |
| *Are hearing impaired translation services available?* | Not Specified |
| *Are ADA accessible client services available?* | Not Specified |

**Assistance available in languages:**
No information reported by attorney

**Courts of Admittance:**

*Federal Courts of Admittance:*
Texas Western Bankruptcy Court
Texas Western District Court

*Other Courts of Admittance:*
No information reported by attorney

*Other States Where authorized to practice:*
No Other States reported by attorney

Education and Certification History

**Law Schools:**

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| University Of Texas | 12/1970 | Doctor of Jurisprudence/Juris Doctor (J.D.) |

**Texas Board of Legal Specialization Certifications:**
No profile data on file for Texas Board of Legal Specialization Certification

Public Disciplinary History





search

advanced search



ABOUT THE STATE BAR     *CASE NO. 041509*

**Home     About the State Bar**     Member Directory

**Detailed Result**

Nigel  Gusdorf 

**Bar Card Number\*:** 08632500

| | |
|---|---|
| **Work Address** | P.O. Box 12967<br>Austin, TX, 78711-2967 |
| **Work Phone Number** | (512) 936-2332 |
| **Primary Practice Location** | AUSTIN , Texas |

Current Member Status

Eligible To Practice In Texas

License Information

**State Bar Card Number\*:** 08632500
**Texas Licensed\*:**          10/22/1974

Practice Information

Leadership

Rules and Procedures

State Bar Departments

Events

Member Directory

Center for Legal History

Employment Opportunities

## Contact Us

## Staff Directory



eFiling for Courts →

Member Benefits →

Marketplace →



FIND A LAWYER

Bar Card #

First Name

Last Name

Search

## Need a Lawyer?
## Get a Referral

Advanced Search

**Print this page** 🖨
**Bookmark** 📖
**Tell a friend** ✉





CourtCall
TELEPHONIC COURT APPEARANCES
888.882.6878

STATE BAR OF TEXAS
INSURANCE TRUST
For More Information
CLICK HERE



Federal Unpublished Opinions
Are You in the Know?
FREE White Paper
on this New Ruling

Loislaw™

**Firm:** Railroad Commision of Texas
**Firm Size:** 11 to 24
**Occupation:** Government Lawyer
**Primary Practice Areas:** Government/Administrative

*CASE NO. 041509*

**Services Provided:**

| | |
|---|---|
| *Are language translation services available?* | Not Specified |
| *Are hearing impaired translation services available?* | Not Specified |
| *Are ADA accessible client services available?* | Yes |

### Assistance available in languages:
No information reported by attorney

### Courts of Admittance:
*Federal Courts of Admittance:*
Texas Western District Court
*Other Courts of Admittance:*
No information reported by attorney
*Other States Where authorized to practice:*
No Other States reported by attorney

### Education and Certification History

### Law Schools:

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| University Of Texas | 05/1974 | Doctor of Jurisprudence/Juris Doctor (J.D.) |

### Texas Board of Legal Specialization Certifications:
No profile data on file for Texas Board of Legal Specialization Certification

### Public Disciplinary History




Home   Login   Career Center   Calendar   Shopping Cart   Contact Us   Site Map

# State Bar of Texas

search
advanced search



Sections & Committees →
Other Bar Groups →
Pro Bono & Community Service →
Client Assistance & Grievance →
Professional Requirements →
News & Publications →
Other Services →
Additional Information for the Public

About the State Bar

Leadership

Rules and Procedures

State Bar Departments

Events

Member Directory

Center for Legal History

Employment Opportunities

ABOUT THE STATE BAR     *CASE NO. 041509*

**Home   About the State Bar**   Member Directory

*TRIAL JANUARY 26, 2006*

**Detailed Result**

HARRIET M. MURPHY   ✓

**Bar Card Number\*:** 14699000   ✓



| | |
|---|---|
| **Work Address** | 3638 QUIETTE DR AUSTIN, TX, 78754 |
| **Work Phone Number** | (512) 928-2045 |
| **Primary Practice Location** | AUSTIN , Texas |

Current Member Status

Eligible To Practice In Texas

License Information

**State Bar Card Number\*:** 14699000
**Texas Licensed\*:**         12/15/1969

Practice Information



## Contact Us
## Staff Directory



eFiling for Courts →
Member Benefits →
Marketplace →



**Bar Card #**

**First Name**

**Last Name**

[Search]

## Need a Lawyer?
Get a Referral


Advanced Search

## Print this page
## Bookmark
## Tell a friend



**CourtCall**
TELEPHONIC COURT APPEARANCES
888.882.6878


STATE BAR OF TEXAS INSURANCE TRUST
For More Information
CLICK HERE

Federal Unpublished Opinions
Are You In the Know?
FREE White Paper
on this New Ruling
Loislaw™

**Firm:**              No information reported by attorney
**Firm Size:**         Solo
**Occupation:**        Private Law Practice
**Primary Practice Areas:**    No information reported by attorney

*CASE NO. 041509*

**Services Provided:**

| | |
|---|---|
| *Are language translation services available?* | Yes |
| *Are hearing impaired translation services available?* | Not Specified |
| *Are ADA accessible client services available?* | Not Specified |

**Assistance available in languages:**
No information reported by attorney

**Courts of Admittance:**

*Federal Courts of Admittance:*
Texas Western District Court
*Other Courts of Admittance:*
No information reported by attorney
*Other States Where authorized to practice:*
No Other States reported by attorney

**Education and Certification History**

**Law Schools:**

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| University Of Texas | 01/1969 | Doctor of Jurisprudence/Juris Doctor (J.D.) |

**Texas Board of Legal Specialization Certifications:**
No profile data on file for Texas Board of Legal Specialization Certification

**Public Disciplinary History**







search

advanced search

*TRIAL JUNE 16, 2006*
*CAUSE NO. C-1-CV-06-000678*

**ABOUT THE STATE BAR**

----

**Home    About the State Bar    Member Directory**

*APPEAL OF*
*CASE NO 041509*

Detailed Result

J David  Phillips  ✓

**Bar Card Number\*:** 15930300  ✓



| | | |
|---|---|---|
| **Work Address** | | P.O. Box 1748<br>Austin, TX, 78767-1748 |
| **Work Phone Number** | | (512) 854-9241 |
| **Primary Practice Location** | | AUSTIN , Texas |

Current Member Status

Eligible To Practice In Texas

License Information

**State Bar Card Number\*:** 15930300
**Texas Licensed\*:**        10/21/1975

Practice Information

Leadership

Rules and Procedures

State Bar Departments

Events

Member Directory

Center for Legal History

Employment Opportunities

Sections & Committees →
Other Bar Groups →
Pro Bono & Community Service →
Client Assistance & Grievance →
Professional Requirements →
News & Publications →
Other Services →
Additional Information for the Public

About the State Bar



**APPEAL NO   03CV06-00614**

**FROM**

ABOUT THE STATE BAR

**Home**   **About the State Bar**   Member Directory

**CAUSE NO.  C-1-CV-06-000678**

Detailed Result

Robert Harrison  Pemberton

Bar Card Number*: 00784740

| | | |
|---|---|---|
| **Work Address** | P.O. Box 12547<br>Austin, TX, 78711 |
| **Work Phone Number** | (512) 463-1733 |
| **Primary Practice Location** | AUSTIN , Texas |

Current Member Status

Eligible To Practice In Texas

License Information

**State Bar Card Number*:**00784740
**Texas Licensed*:**          11/06/1992

Practice Information



## Contact Us
## Staff Directory



Bar Card #
First Name
Last Name



## Need a Lawyer?
## Get a Referral



**Print this page**
**Bookmark**
**Tell a friend**





**Firm:** Court of Appeals
**Firm Size:** 61 to 100
**Occupation:** Full-Time Judge
**Primary Practice Areas:** Appellate

*03:06-000614 CV*

**Services Provided:**

| | |
|---|---|
| *Are language translation services available?* | Not Specified |
| *Are hearing impaired translation services available?* | Not Specified |
| *Are ADA accessible client services available?* | Not Specified |

**Assistance available in languages:**
No information reported by attorney

**Courts of Admittance:**
*Federal Courts of Admittance:*
Fifth Circuit Court of Appeals
*Other Courts of Admittance:*
No information reported by attorney
*Other States Where authorized to practice:*
No Other States reported by attorney

**Education and Certification History**

**Law Schools:**

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| Harvard University | 06/1992 | Doctor of Jurisprudence/Juris Doctor (J.D.) |

**Texas Board of Legal Specialization Certifications:**
No profile data on file for Texas Board of Legal Specialization Certification

**Public Disciplinary History**



# St ate Bar of Te xas

*search*
*advanced search*

**0-1-6N-06-000262**

ABOUT THE STATE BAR    *REMOVAL ON*



**Home    About the State Bar**    Member Directory

*3/29/06 TO 1:06CV2264-RP*

### Detailed Result

Scott H. Jenkins ✓

**Bar Card Number\*:** 10624300 ✓

 ✓

| | | |
|---|---|---|
| **Work Address** | Travis County Court House P.O. Box 1748 Austin, TX, 78767 | |
| **Work Phone Number** | (512) 854-9308 | |
| **Primary Practice Location** | AUSTIN , Texas | |

### Current Member Status

Eligible To Practice In Texas

### License Information

**State Bar Card Number\*:** 10624300
**Texas Licensed\*:**    11/06/1978

**Sections & Committees →**
**Other Bar Groups →**
**Pro Bono & Community Service →**
**Client Assistance & Grievance →**
**Professional Requirements →**
**News & Publications →**
**Other Services →**
**Additional Information for the Public →**
About the State Bar →

Leadership
Rules and Procedures
State Bar Departments
Events
Member Directory
Center for Legal History
Employment Opportunities

## Contact Us
## Staff Directory



eFiling for Courts →
Member Benefits →
Marketplace →

Bar Card #

First Name

Last Name

[Search]

## Need a Lawyer?
Get a Referral



Advanced Search

**Print this page** 🖶
**Bookmark** 📖
**Tell a friend** ✉



## Practice Information

**Firm:**          53rd District Court
**Firm Size:**     None Specified
**Occupation:**    Full-Time Judge
**Primary Practice Areas:**    No information reported by attorney
**Services Provided:**

| | |
|---|---|
| *Are language translation services available?* | Not Specified |
| *Are hearing impaired translation services available?* | Not Specified |
| *Are ADA accessible client services available?* | Not Specified |

**Assistance available in languages:**
No information reported by attorney
**Courts of Admittance:**
*Federal Courts of Admittance:*
Texas Northern District Court
Texas Western District Court
*Other Courts of Admittance:*
No information reported by attorney
*Other States Where authorized to practice:*
No Other States reported by attorney

## Education and Certification History
### Law Schools:

| Law School | Graduation Date | Degree Earned |
|---|---|---|
| University Of Texas | 08/1978 | Doctor of Jurisprudence/Juris Doctor (J.D.) |

### Texas Board of Legal Specialization Certifications:
Personal Injury Trial Law

## Public Disciplinary History