UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| MICHAEL BUESGENS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-1964 (RBW) |
| CHARLES BROWN, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

On November 15, 2006, the plaintiff[1], proceeding pro se, filed his Complaint in this action, inartfully alleging that the defendant, Charles E. Brown, violated, inter alia, the American with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Fair Housing Act, and 42 U.S.C. §1983 ( 2000).[2] Complaint ("Compl.") at 15-27. Although the plaintiff alleges violations of these several statutes, the plaintiff does not set forth the specific sections of the statutes upon

---

[1] The plaintiff is a "serial litigant," see Buesgens v. Travis County, Texas, No. A-07-CA-427-SS (W.D. Tex. June 26, 2007); Buesgens v. Ellan Krcha, Civ. Action No. 07-185 (D.D.C. September 6, 2007), who has filed numerous duplicative or frivolous actions in this and other courts. As recognized by the District of Columbia Circuit, the constitutional right of access to the courts is not absolute or unconditional. In re Green, 669 F.2d 779, 785 (D.C. Cir. 1981). Thus, if a litigant persistently abuses the judicial process by filing repetitive, frivolous lawsuits, "a Court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985). In regards to the plaintiff, in addition to an order issued by the United States District Court for the Western District of Texas, see Buesgens v. Travis County, Texas, limiting his filing of additional pleadings, similar restrictions have been imposed by this Court, see Buesgens v. Ellan Krcha, Civ. Action No. 07-185, slip op. at 1.

[2] The plaintiff brought this action against thirty-eight defendants, including Charles E. Brown. Compl. at 1-15. However, the instant motion to dismiss pertains only to defendant Brown.

which he bases his claims.[3] The plaintiff also alleges other claims against the defendant that are incoherent.[4] Id.

Currently before this Court is the defendant's motion to dismiss, filed on March 19, 2007, pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction).[5]

---

[3] Title I of the ADA prohibits disability discrimination in the employment context, Title II prohibits disability discrimination in public services provided by public entities, and Title III prohibits disability discrimination in the provision of public accommodations. Since the plaintiff does not allege the specific section or sections of the ADA upon which he bases his claims, the Court finds, upon review of the plaintiff's complaint and his opposition to the defendant's motion to dismiss, that Title III is the only possible section of the ADA that could afford the plaintiff any relief. Therefore, it appears that the plaintiff is asserting ADA claims pursuant to 42 U.S.C. §§ 12181-12189 (2000). Specifically, however, 42 U.S.C. § 12182 appears to be the only applicable section upon which the plaintiff could base a claim in this action because it prohibits discrimination against any individual on the "basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. The sections of the remaining statutes cited by the plaintiff upon which he appears to rely are various provisions of the Rehabilitation Act of 1973 ("the Rehabilitation Act"), 29 U.S.C. §§ 701-718 and several provisions of the Fair Housing Act (the Fair Housing Act"), 42 U.S.C. §§ 3601, 3604. Compl. at 15-27.

[4] The plaintiff's Complaint does little in providing guidance as to the additional claims he is asserting. The plaintiff vaguely and confusingly asserts that defendant Brown violated and interfered with his (1) "apartment lease contract dated: December 5, 2005 for the period of December 26, 2005 to October 22 2006", Plaintiff's Opposition to the Defendant's Motion to Dismiss (" Pl.'s Opp'n.") at 5, Compl. at 16, and (2) "interfered with his HUD complaint", id. Further, the plaintiff does not allege facts specific to each legal theory, but rather, merely asserts that there was "negligent misrepresentations by attorneys and law firms . . . ," id. at 21,"attorney breach of fiduciary duty to the courts and to non-client plaintiff Buesgens," id., and state and federal tax fraud, id at 22. Admittedly, the Supreme Court instructed in Haines v. Kerner, 404 U.S. 519, 520 (1972), that the complaint of a pro se plaintiff must be held to "less stringent standards than formal pleadings drafted by lawyers." See Richardson v. United States 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that "[c]ourts must construe pro se filings liberally"); see also Haines, 404 U.S. at 520. However, despite this required leniency, a pro se plaintiff's Complaint "must at least meet a minimal standard" of what pleadings must entail. Price v. Phoenix Home Life Ins. Co., 44 F. Supp. 2d 28, 31 (D.D.C. 1999) (citing Wilson v. Civil Town of Clayton, 839 F.2d 375, 378-79 (7th Cir.1988)). In assessing whether the Complaint survives the motion to dismiss, the Court must also consider the plaintiff's expanded statements of facts set forth in his opposition to defendant Brown's motion. See Richardson, 193 F.3d at 548(district court erred in failing to consider pro se plaintiff's opposition to motion to dismiss as amendment to complaint).

[5] The defendant also moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(3) (improper venue) and 12(b)(6) (failure to state a claim upon which relief can be granted). However, due
(continued...)

Defendant's Motion To Dismiss, or in the Alternative Motion to Transfer ("Def.'s Mot.").[6]  For the reasons set forth below, the defendant's motion must be granted.

## I. Standards of Review

Personal jurisdiction "'is an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999).  A plaintiff bears the burden of establishing personal jurisdiction, and must allege specific facts on which personal jurisdiction is based; he cannot rely

---

[5](...continued)
to the resolution of the defendant's Rule 12(b)(2) argument, the Court need not address these alternative grounds for dismissal.  However, because the defendant asserts that the plaintiff's claims are legally baseless, the Court has assessed whether the defendant's position is correct in determining whether this matter should be transferred pursuant to Federal Rule of Civil Procedure 12(b)(3) to the district where it should have been brought–the Western District of Texas–as that Court would be confronted with the same Rule 12(b)(6) dismissal motion now before this Court, which it would have to grant.  See Davis v. Am. Soc'y of Civil Eng'rs, 290 F. Supp. 2d 116, 120 (D.D.C. 2003).  The plaintiff's ADA, Rehabilitation Act, Fair Housing Act, and 42 U.S.C. § 1983 claims arise out of his eviction from the Falcon Ridge Apartments located in Austin, Texas.  Pl.'s Opp'n., Exhibit ("Ex.") 4 (Letter from Charles E. Brown to Michael Buesgens dated December 15, 2005) ("Warning Letter").  The plaintiff was evicted after he failed to stop harassing the management personnel of the apartment complex and its residents in connection with the plaintiff's allegation that he was being disturbed by another resident's dog. Id.; see also Pl.'s Opp'n, Ex. 6 (Notice to Vacate from Charles Brown to Michael Buesgens dated December 21, 2005) ("Notice to Vacate") at 1. The plaintiff does not dispute that although management of the apartment complex offered him three options prior to his eviction and further violation of the lease, the plaintiff rejected all three alternatives.  Pl's Opp'n, Ex. 4 (Warning Letter).  These options were: (1) the plaintiff could terminate his lease early without penalty and continue paying rent until he vacated the property; (2) the plaintiff could move to another unit within the complex, possibly a third floor unit, so that he would not have anyone living above him; or (3) the plaintiff could stay in his assigned apartment and the neighbor with the dog living above the plaintiff would move the following month–January 2006 – to another unit. Id. On this record, the Court concludes that the plaintiff's claims are meritless because there is no basis for finding that, as he contends, he was denied reasonable accommodations, subjected to discrimination based on his disability, or that he was coerced, intimidated, or threatened from exercising or enjoying his fair housing rights.  Accordingly, the defendant's motion to transfer is denied.

[6] The following pleadings have been submitted in connection with this motion: (1) Defendant's Memorandum and Authorities in Support of Defendant's Motion to Dismiss, or in the Alternative to Transfer ("Def.'s Mem."); and (2) Plaintiff's Opposition to the Defendant's Motion to Dismiss.  The defendant did not file a reply to the plaintiff's opposition.

on merely conclusory allegations. See Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005); Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). Accordingly, the "plaintiff must allege specific acts connecting the defendant with the forum." See Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001). When considering whether personal jurisdiction exists, the Court need not treat all of the plaintiff's allegations as true. Atlantigas Corp. v. NiSource, Inc., 290 F. Supp. 2d 34, 42 (D.D.C. 2003). Instead, the Court "may receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts." United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000); see also Capital Bank Int'l, Ltd. v. Citigroup, Inc., 276 F. Supp. 2d 72, 74 (D.D.C. 2003). However, the Court must resolve "factual discrepancies appearing in the record . . . in favor of the plaintiff." Crane, 894 F.2d at 456. But, the "plaintiff cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." Atlantigas Corp., 290 F. Supp. 2d at 42.

## II.  Background[7]

This action arises out of the plaintiff's eviction from the Falcon Ridge Apartments located in Austin, Texas. Pl.'s Opp'n, Exhibit ("Ex") 4[8] (Letter from Charles E. Brown to

---

[7] As previously noted, the plaintiff's Complaint is vague and confusing. Therefore, it does little in providing guidance concerning the claims he is asserting. Although the plaintiff's opposition provides the Court with more insight as to the claims he is alleging, it is the materials that the plaintiff attached to his opposition to the defendant's motion to dismiss that provide the Court with the greatest amount of detail of the claims being made against the defendant. Jerome Stevens Pharm., Inc. v. FDA., 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."); Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction.")

[8] The plaintiff attached a handwritten exhibit list to his opposition to defendant Brown's Motion
(continued...)

Michael Buesgens dated December 15, 2005) ("Warning Letter"). The plaintiff had been a resident of Falcon Ridge Apartments and defendant Brown is an attorney who at one time represented the apartment complex in the legal proceedings surrounding the plaintiff's eviction from the complex. Id. On December 15, 2005, defendant Brown sent the plaintiff a letter advising him to stop harassing the management personnel of the apartment complex and its residents because the plaintiff was allegedly being disturbed by another resident's dog. Id. at 1. Defendant Brown further advised the plaintiff that (1) "the Austin Police Department [had] investigated [the plaintiff's] claims and [had] not found that [his] neighbor's dog [was] causing excessive noise as [the plaintiff had] alleged," id., (2) "[t]he [possession of the] dog [was] within the regulations and policies adopted by [the Falcon Ridge Apartments]," id., (3) "[the apartment management's decision to] allow[ ] [the plaintiff's] neighbor to have a pet d[id] not constitute discrimination," id. at 2, and (4) that if he did not cease harassing the "management and other residents and other disruptive behavior immediately [he] w[ould] be evicted," id. Further, defendant Brown informed the plaintiff that he was "a valued resident at Falcon Ridge Apartments", id., and made several "proposals to [the plaintiff] in an effort to settle [the] matter to [the plaintiff's] satisfaction," id. at 2. Defendant Brown offered the plaintiff three options: (1) the plaintiff could terminate his lease early without penalty and pay rent until he vacated the property; (2) the plaintiff could move to another unit within the complex, possibly a third floor

---

[8](...continued)
to Dismiss, however, the list is illegible in some places and the plaintiff listed the exhibits with both numbers and letters. Moreover, the plaintiff did not actually mark the exhibits themselves with either numbers or letters. Therefore, in order to facilitate the identification of the plaintiff's exhibits, the Court has numbered them based on the order in which they were attached to the plaintiff's papers opposing the Motion to Dismiss.

unit, so that he would not have anyone living above him; or (3) the plaintiff could stay in his assigned apartment and the neighbor living above the plaintiff would be moved the following month, January 2006.  Id. at 2.

Thereafter, on December 21, 2005, defendant Brown sent the plaintiff a notice to vacate, advising the plaintiff that his "rights of occupancy and possession of the [p]remises [were being] terminated" because he was in violation of paragraph 20 (prohibited conduct) of his lease and in default pursuant to paragraph 32 of the lease.  Pl.'s Opp'n, Ex. 6 (Notice to Vacate from Charles Brown to Michael Buesgens dated December 21, 2005) ("Notice to Vacate") at 1.  The plaintiff was advised to "vacate the [p]remises on or before 11:59:59 p.m. on the 24th day of December, 2005."  Id. Defendant Brown further informed the plaintiff that his "liability under the [l]ease for rent and other charges [he] [possibly] ow[ed] ha[d] not been terminated."  Id. at 1.  In response, the plaintiff sent defendant Brown a letter requesting reasonable accommodations.  Pl.'s Opp'n, Ex. 7 (Request for reasonable accommodation dated December 22, 2005).  The plaintiff advised defendant Brown that his "letter [was] a formal Request for Reasonable Accommodation under the Fair Housing Act."  Id. ¶ 1.  The plaintiff also informed defendant Brown that "[s]ince October of 2005, [he] [had] made written and verbal complaints to management about the loud dog that live[d] in the apartment above [him]."  Id. ¶ 2.  The plaintiff indicated that he is "disabled and [is] unable to peacefully enjoy [his] apartment due to the dog's loudness aggravating [his] disability."  Id.  Further, the plaintiff requested that defendant Brown rescind the Notice to Vacate that [he] received on Wednesday, December 21, 2005, and allow [him] to continue living in [his] apartment."  Id. ¶ 3.  The plaintiff proclaimed that if his request was not granted, "he [was] prepared to seek enforcement of [his] rights under the Fair Housing Act . . .,

6

which may include filing a complaint with the United States Department of Housing & Urban Development and/or filing a civil lawsuit." Id. ¶ 5. The plaintiff subsequently filed a housing discrimination complaint pursuant to the Fair Housing Act, 42 U.S.C. ¶¶ 3600-3620 (2000), with the United States Department of Housing and Urban Development ("HUD") on December 28, 2005. The plaintiff alleged that "the respondent coerced, intimidated, threatened or interfered with a person in the exercise or enjoyment of fair housing rights or assisting another in enjoying such rights." Pl.'s Opp'n, Ex. 9 (Housing Administrative Discrimination Complaint dated December 28, 2005.) The plaintiff further alleged that Mandy Rogers, who was being represented by defendant Brown, failed to provide reasonable accommodations for the plaintiff. Id. ¶¶ 3,6.

Falcon Ridge Apartments then filed suit against the plaintiff in Travis Country, Texas and the plaintiff received an eviction citation on December 30, 2005. Pl.'s Opp'n, Ex. 13 (Eviction Citation issued by Travis County, Texas).[9] The City of Austin's Equal Employment/Fair Housing Office declined the plaintiff's request to conduct an investigation of his eviction because legal action had been initiated and the trial had already commenced. Id., Ex. 39 (Letter from John Benavides, Lead Investigator for City of Austin, Equal Employment/Fair Housing Office to the defendant dated February 17, 2006); id., Ex. 40 (Letter from Benavides to the plaintiff dated February 21, 2006). Subsequently, the Fort Worth Regional Office of HUD advised the plaintiff on April 21, 2006, that it "concur[ed] with [the City of Austin's Equal Employment/Fair Housing Office's] determination to administratively close the investigation based upon [the] fact

---

[9] Defendant Brown withdrew as counsel for the apartment complex in the eviction action on June 27, 2006 and was replaced by Gregory Cagle. June 27, 2006 Order on Motion for Withdrawal of Counsel.

that trial [had] begun." Id., Ex. 41 (Letter from Garry Sweeney, Director of the Office of Fair Housing and Equal Opportunity, U.S. Department of Housing and Urban Development, Fort Worth Regional Office, to the plaintiff dated April 21, 2006).  Thereafter, Kim Kendrick, Assistant Secretary for Fair Housing and Equal Opportunity of HUD in Washington, D.C., informed the plaintiff that "[she] was in receipt of [his] letters of May 31, 2006, and June 6, 2006, wherein [the plaintiff] allege[d] misconduct by Fair Housing and Equal Opportunity officials." Id., Ex. 42 (Letter from Kim Kendrick, Assistant Secretary of Fair Housing and Equal Opportunity of HUD in Washington, D.C., to the plaintiff dated July 28, 2006).  Specifically, she informed the plaintiff that in response to his complaint that "FHA Statutes and HUD Regulations [were] being ignored and omitted by [Fair Housing and Equal Opportunity officials]" id. ¶1, including, but not limited to, Garry Sweeney, Milton Turner, Turner Russell, and Joe F. Castillo, "the Department [had] reviewed and assessed the performance of the named [HUD] personnel in the conduct of their duties to ensure that their actions [were] in compliance with HUD's guidelines, procedures, and practices for misconducting inquiries and investigations under Title VIII of the Fair Housing Act, as amended," id. ¶2.  The plaintiff was further advised that this review had revealed "that there is no evidence to suggest HUD personnel acted improperly regarding the processing of [the plaintiff's] complaint." Id.  In addition, Ms. Kendrick advised the plaintiff that his "decision to move [his] case to state court required that the City of Austin, Equal Employment/Fair Housing Office close [his] case." Id. ¶3.  Thus, "the commencement of trial prevented further action by the Office of Fair Housing and Equal Opportunity." Id.

       The plaintiff filed his Complaint in this case on November 15, 2006, against defendant

Brown and approximately thirty-eight other individuals alleging that they violated, <u>inter</u> <u>alia</u>, the American with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the Fair Housing Act, and 42 U.S.C. § 1983.

### III.  Legal Analysis

The defendant asserts that the plaintiff's Complaint should be dismissed because he "does not meet the statutory requirements sufficient to permit this Court to exercise personal jurisdiction over him either through conduct or through an enduring relationship" with the District of Columbia.  Def's Mem. at 2.  Specifically the defendant contends that "[a]ll of the [alleged] factual statements related to [him], even if taken as true, occurred entirely and solely within the State of Texas," <u>id.</u>, and that the "[p]lalintiff fails to allege that any of the incidents giving rise to his claims against [defendant Brown] occurred in the District of Columbia," <u>id.</u> at 3.  Therefore, the defendant contends that "[i]f this Court were to exercise personal jurisdiction over [him], it would violate the due process rights . . . guaranteed to [him] by the Fourteenth Amendment of the United States Constitution." <u>Id.</u>  In his opposition, the plaintiff contends that this Court has personal jurisdiction over defendant Brown because: (1) "the attorneys . . . consented to this Court[' ]s personal jurisdiction when they interfered and participated in the wrongful termination of [the] plaintiff[']s . . . HUD Complaint filed [on] December 28, 2005", Pl's Opp'n at 20, (2) the plaintiff "has made sufficient contacts with the leaders of HUD at Washington, DC to establish this Court's venue", <u>id.</u> at 7, and (3) "Washington, DC is the home of these laws and regulations [and] Texas is not," <u>id.</u> at 9.

The "traditional approach" followed by courts in this Circuit to determine whether there is a sufficient connection between a defendant and the District of Columbia for the purpose of

assessing whether a court in this jurisdiction may exercise personal jurisdiction is to "ask[ ] first whether there [is] an applicable long-arm statute that would authorize service on the defendant[ ], and then whether the application of such a statute would comply with the demands of due process." Mwani v. Bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005). This latter requirement places the onus on the plaintiff to demonstrate that there are " 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted)). "Under the 'minimum contacts' standard, courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Here, the plaintiff cannot satisfy the first requirement to establish personal jurisdiction, let alone the second. The District of Columbia's long-arm statute applies in this case due to the absence of any federal long-arm statute. See, e.g., Ibrahim v. District of Columbia, 357 F. Supp. 2d 187, 192-93 (D.D.C. 2004) (determining whether personal jurisdiction could be exercised over defendants outside the District of Columbia in § 1983 suit under the District of Columbia's long-arm statute); Charles v. Kelly, 790 F. Supp. 344, 348 (D.D.C. 1992) (same). That statute provides in pertinent part that

> [a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's-
> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious

> injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia; (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of the contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia. . . .

D.C. Code Ann. § 13-423(a) (2001). The plaintiff has not met his burden of establishing that the defendant falls into any of these seven categories. As the defendant correctly notes in his motion, he will be forced to defend a suit "in a jurisdiction hundreds of miles from his residence . . . ", Def's Mem. at 5, absent anything in the limited record before the Court suggesting that the defendant has ever "transact[ed] any business in the District of Columbia," D.C. Code Ann. § 13-423(a)(1), "contract[ed] to supply services in the District of Columbia," id. at § 13-423(a)(2); see also Def's Mot. at 4-5, "contract[ed] to insure or act as a surety" for anyone or any agreement "located, executed, or to be performed within the District of Columbia," id. at § 13-423(a)(6); see also Def's Mot. at 4-5, held "an interest in, us[es], or possess[es] real property in the District of Columbia," id. at § 13-423(a)(5); see also Def's Mot. at 4-5, or had a "marital or parent and child relationship in the District of Columbia," id. at § 13-423(a)(7); see also Def's Mot. at 4-5. And, even assuming the Court could construe the plaintiff's allegations as stating a claim for "tortious injur[ies]," the defendant accurately contends that such injuries are not alleged to have occurred in the District of Columbia as required by the District of Columbia long-arm statute. Id. at §§ 13-423(a)(3), 13-423(a)(4); see also Def's Mem. at 4. Instead, the defendant notes that "[t]he [p]laintiff's allegations regarding the [d]efendant . . . occurred solely within the State of Texas, Travis County to be precise." Def's Mem. at 4.

11

Even if the District of Columbia long-arm statute permitted this Court to exercise personal jurisdiction over the defendant, doing so based on the record before the Court would violate due process. See GTE New Media Servs. Inc., 199 F.3d at 1347 ("Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause."). The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (internal quotation omitted), "[b]y requiring that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign,'" id. at 472 (internal quotation omitted). "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (internal quotations and citation omitted). Therefore, a plaintiff must show "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "Under the 'minimum contacts' standard, courts must insure that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" GTE New Media Servs. Inc., 199 F.3d at 1347 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

In this case, there is no evidence that the defendant "purposefully directed" any activities at residents of the District of Columbia. Nor is there any evidence that the defendant has any

"contacts, ties, or relation", Burger Kings Corp., 471 U.S. at 472, to the District of Columbia other than the filing of the plaintiff's lawsuit. However, the plaintiff has not established that the alleged acts that provide the basis for the filing of this action occurred in the District of Columbia or that the defendant maintains a residence or place of business within this jurisdiction. Aside from identifying defendant Brown and where he resides, the plaintiff's pleadings does absolutely nothing to show a relationship between his allegations and claims against defendant Brown and the District of Columbia. Thus, the plaintiff has not shown that the defendant has had minimum contacts with this jurisdiction. Accordingly, exercising personal jurisdiction over the defendant would not comport with the fundamental notions of " 'fair play and substantial justice' "as required by the Due Process Clause.[10] Id. at 477 (quoting Int'l Shoe Co., 326 U.S. at 320). The defendant's motion to dismiss must therefore be granted.

### IV. Conclusion

Based on the foregoing analysis, the defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) must be **GRANTED**.[11]

---

[10] Of course, a defendant can always waive his personal jurisdiction defenses by explicitly consenting to the Court's jurisdiction or by failing to raise the personal jurisdiction challenge in a responsive motion filed under Rule 12 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(h)(1) (defense of lack of personal jurisdiction waived "if omitted from a motion in the circumstances described in [Rule 12](g)", which provides that a party making a motion under Rule 12 who "omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion ... shall not thereafter make a motion based on the defense or objection so omitted"). Here, the defendant has not waived his personal jurisdiction defenses or objections by having either consented to this Court's jurisdiction or failing to raise the personal jurisdiction challenge in a responsive pleading.

[11] An Order consistent with this Court's Memorandum Opinion has been filed.

**SO ORDERED**.

/s/_____
Reggie B. Walton
United States District Judge